**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2059
_____

TRINITY INDUSTRIES, INC.;
TRINITY INDUSTRIES RAILCAR CORPORATION,

Appellants

v.

CHICAGO BRIDGE & IRON COMPANY

On Appeal from the United States District Court
for the Western District of Pennsylvania
(No. 2-08-cv-01709)
District Judge:  Honorable Gary L. Lancaster

Argued May 15, 2013

Before:  SMITH, FISHER, and CHAGARES, <u>Circuit Judges</u>.

(Filed:  August 20, 2013)
_____

OPINION
_____

Heather B. New, Esq. (Argued)
Bell Nunnally & Martin
3232 McKinney Avenue
Suite 1400
Dallas, TX 75204

Frederick W. Addision, III, Esq.
Nolan C. Knight
Munsch, Hardt, Kopf, Harr & Dinan
3800 Lincoln Plaza
500 North Akard Street
Dallas, TX 75201

Leonard G Ambrose, III, Esq.
Ambrose, Friedman & Weichler
319 West 8th Street
Erie, PA 16502-1495
  Attorneys for Appellant

Cathleen M. Devlin, Esq. (Argued)
George E. Rahn, Jr., Esq.
Christina D. Riggs, Esq.
Saul Ewing
1500 Market Street
Centre Square West, 38th Floor
Philadelphia, PA 19102
  Attorneys for Appellee

Ignacia S. Moreno, Esq.
Aaron P. Avila, Esq.
David S. Gualtieri, Esq.
United States Department of Justice
Environment & National Resources Division

P.O. Box 7415
Washington, D.C. 20044
        Attorneys for Amicus Appellant

Steven F. Baicker-McKee, Esq.
David D. McKenery, Jr., Esq.
Babst, Calland, Clements and Zomnir, P.C.
Two Gateway Center, 7th Floor
Pittsburgh, PA 15222
        Attorneys for Amicus Appellee

CHAGARES, Circuit Judge.

        In this case we consider the assignment of liability for environmental cleanup under two federal statutes:   the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675; and the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901, et seq.   Trinity Industries, Inc. and Trinity Industries Railcar Corporation (together, "Trinity") appeal the order of the United States District Court for the Western District of Pennsylvania, which granted summary judgment to defendant Chicago Bridge & Iron Company ("CB&I") on Trinity's CERCLA and RCRA claims and declined to exercise supplemental jurisdiction over the state-law claims raised by Trinity.   We consider the extent to which a settlement of state liability for environmental contamination affects the contribution scheme provided by CERCLA, and whether injunctive relief under RCRA is available when a remediation plan is already underway.   For the reasons articulated below, we will affirm in part and vacate and remand in part.

I.

The environmental contamination at issue in this case is located at an industrial facility called the South Plant, located on a fifty-three-acre property in Greenville, Pennsylvania. Having acquired the South Plant in 1988, Trinity manufactured railcars there until 2000 but claims that no manufacturing activity takes place there now. Some buildings in the South Plant are vacant, and some sections of the South Plant are used for storage. In June 2004, the Commonwealth of Pennsylvania started investigating allegations that hazardous substances were being released at the South Plant. Pennsylvania initiated enforcement proceedings against Trinity in 2006, which resulted in Trinity's entering into an agreement whereby it pleaded nolo contendere to five misdemeanor counts of unlawful conduct. Furthermore, on December 21, 2006, Trinity and the Pennsylvania Department of Environmental Protection ("PaDEP" or "DEP") entered into a consent order ("Consent Order") whereby Trinity agreed to fund and conduct "Response Actions" according to a schedule approved by DEP. The Consent Order was entered into pursuant to Pennsylvania's Hazardous Sites Cleanup Act ("HSCA"), 35 Pa. Stat. § 6020.101, et seq., and Land Recycling and Environmental Remediation Standards Act ("LRA"), 35 Pa. Stat. § 6026.101, et seq. See Appendix ("App.") 36-62. Trinity claims to have undertaken "preliminary investigative work in anticipation of cleanup," but "has yet to perform shovel-in-the-ground remediation." Trinity Br. 55.

The Consent Order names Trinity as a "responsible person" for the release of hazardous substances at the South Plant but, Trinity claims, also "expressly reserve[s] [Trinity's]

4

right to pursue its cost recovery, contribution, and other claims against CB&I." Trinity Br. 13. Specifically, the Consent Order indicates that nothing contained therein "shall constitute or be construed as a release or covenant not to sue" parties not named in the Consent Order; moreover, "Trinity expressly reserve[s] the right to sue or continue to sue, or seek any other appropriate relief from" any party not named in the Consent Order. App. 60.

Trinity's claims are based on CB&I's alleged role in causing the contamination now under remediation at the South Plant. Trinity purchased the South Plant from MBM Realty Associates ("MBM") in 1988, which had purchased it from defendant CB&I in 1985.[1] In 1910, CB&I constructed a facility for the manufacture of steel products such as storage tanks, pressure vessels, water towers, and bridge components, which it operated throughout its seventy-five-year ownership of the South Plant. Trinity alleges that CB&I contaminated several identified sections of the South Plant through abrasive blasting, "pickling" (which involves submerging steel plates in acid), and painting. Trinity points to deposition testimony from a former CB&I employee, Ken Montesano, who (like other deponents) confirmed that CB&I's activities left residual materials on the site. App. 224-34. Trinity alleges that this residue is responsible for some of the environmental contamination at the South Plant.

---

[1] The sale of the South Plant to MBM came with an Indemnification Agreement that indemnified the buyer from environmental harms caused by CB&I. That Agreement was transferred to Trinity after Trinity purchased the South Plant.

5

After signing the Consent Order with Pennsylvania that bound it to undertake remediation of the South Plant, Trinity filed the instant lawsuit under CERCLA, RCRA, and state law, seeking contribution from CB&I for its share of remediation costs and injunctive relief ordering CB&I's participation in the remediation. The District Court granted summary judgment to CB&I on the CERCLA and RCRA claims and, declining to exercise supplemental jurisdiction, dismissed the remaining state-law claims without prejudice as to the assertion of the state-law claims in state court. Trinity appealed the grant of summary judgment. The United States filed an amicus brief in support of Trinity. Greenlease Holding Company, the defendant in a similar CERCLA/RCRA suit filed by Trinity in the Western District of Pennsylvania concerning cleanup of a plot of land called the North Plant, filed an amicus brief in support of CB&I's position.

II.

The District Court had jurisdiction over this case pursuant to 28 U.S.C. § 1331, as several of Trinity's claims arise under United States statutes, and pursuant to 28 U.S.C. § 1367, because the court could choose to exercise supplemental jurisdiction over Trinity's state-law claims. We have jurisdiction under 28 U.S.C. § 1291.

This Court exercises plenary review over a district court's grant of summary judgment, applying the same standard employed by the district court. Curley v. Klem, 298 F.3d 271, 276 (3d Cir. 2002). That is, we "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a). In doing so, "we view all evidence in the light most favorable to the non-moving party." Kurns v. A.W. Chesterton Inc., 620 F.3d 392, 395 (3d Cir. 2010).

A district court can decline to exercise supplemental jurisdiction in several circumstances, including a situation where "the district court has dismissed all claims over which it has original jurisdiction," as in this case. 28 U.S.C. § 1367(c)(3). We review a district court's decision not to exercise supplemental jurisdiction over a plaintiff's state-law claims for abuse of discretion. Elkadrawy v. Vanguard Grp., Inc., 584 F.3d 169, 172 (3d Cir. 2009).

## III.

We consider whether CERCLA § 113(f)(3)(B) provides a contribution claim where the party seeking contribution has settled its state-law liability (as opposed to its liability under CERCLA), and whether injunctive relief pursuant to RCRA § 7002 (a)(1)(B) is available where a remediation plan has already been instituted and begun — both issues of first impression before this Court. Trinity also raised the issue of whether the District Court abused its discretion in declining to exercise supplemental jurisdiction over Trinity's state-law claims once it had granted summary judgment to CB&I on Trinity's federal claims.

## A.

Trinity seeks relief against CB&I pursuant to CERCLA § 113(f)(3)(B), which provides:

> A person[2] who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement referred to in paragraph (2) [that is, an administrative or judicially approved settlement of that party's liability to the United States or a State].

42 U.S.C. § 9613(f)(3)(B). Trinity argues that the Consent Order constitutes a resolution of liability as provided for in § 113(f)(3)(B) so that Trinity is entitled to seek contribution from a party like CB&I. The District Court, however, held that § 113(f) is inapplicable to Trinity's case "because the Consent Order does not resolve Trinity's <u>CERCLA</u> liability." App. 18 (emphasis added). Indeed, this case concerned a Consent Order pursuant to two Pennsylvania statutes, the HSCA and LRA — not the federal CERCLA regime.

The District Court interpreted CERCLA § 113(f)(3)(B) as allowing contribution only for claims brought under CERCLA itself. As CB&I notes, this interpretation appears

---

[2] Under CERCLA, "person" includes, among other things, "an individual, firm, corporation, association, partnership, consortium, joint venture, [or] commercial entity." 42 U.S.C. § 9601(21).

8

to accord with that of the Court of Appeals for the Second Circuit, which has determined that § 113(f)(3)(B) claims "create a contribution right only when liability for CERCLA claims, rather than some broader category of legal claims, is resolved." Consol. Edison Co. of N.Y., Inc. v. UGI Utils., Inc., 423 F.3d 90, 95 (2d Cir. 2005). Observing that § 113(f)(3)(B) requires "resolution of liability for 'response action[s],'" the court in Consolidated Edison concluded that "response action" "is a CERCLA-specific term describing an action to clean up a site or minimize the release of contaminants in the future." Id. at 95-96.

The Consolidated Edison court relied upon a House Committee Report concerning the Superfund Amendments and Reauthorization Act of 1986 (which enacted CERCLA § 113) and noted that, according to this legislative history, "section 113 'clarifies and confirms the right of a person held jointly and severally liable under CERCLA to seek contribution from other potentially liable parties.'" Id. at 96 (quoting H.R. Rep. No. 99-253(I), at 79 (1985)). However, as the United States points out, "this passage refers to contribution claims under § 113(f)(1), not § 113(f)(3)(B), as it is only through a 'civil action under . . . section 9607(a),' [CERCLA § 113(f)(1)], that a PRP [("potentially responsible party")] may be 'held jointly and severally liable' for response costs under CERCLA." U.S. Br. 19. The Court of Appeals for the Second Circuit, however, read the legislative history's "under CERCLA" requirement to apply to § 113(f)(3)(B). Accordingly, it held that contribution actions cannot be brought under § 113(f)(3)(B) when the settlement in question resolves liability for a state-law claim, as opposed to a CERCLA claim.

9

The Court of Appeals for the Second Circuit reiterated this rule in W.R. Grace & Co. v. Zotos International, Inc., holding that agreement to a consent order that resolved a plaintiff's New York state-law claims did not authorize the plaintiff's suit under § 113(f)(B)(3) because the consent order "did not resolve CERCLA claims that could be brought by the federal government." 559 F.3d 85, 91 (2d Cir. 2009). That is, an "open . . . possibility" remained "that the [New York State Department of Environmental Conservation ("DEC")] or EPA could, at some future point, assert CERCLA or other claims," id., so the resolution of liability necessary for a § 113(f)(3)(B) claim did not exist. Likewise, many of the district court cases cited by CB&I as further support for this rule largely rely upon the rule promulgated in Consolidated Edison and followed in W.R. Grace. See, e.g., Differential Dev.-1994, Ltd. v. Harkrider Distrib. Co., 470 F. Supp. 2d 727, 740-43 (S.D. Tex. 2007) (citing Consolidated Edison for the proposition that a settlement that does not expressly resolve CERCLA liability does not authorize a CERCLA § 113(f)(3)(B) contribution action); City of Waukesha v. Viacom Int'l Inc., 404 F. Supp. 2d 1112, 1115 (E.D. Wis. 2005) (same).

Notwithstanding the rule adopted by the Court of Appeals for the Second Circuit and by various district courts, we hold that § 113(f)(3)(B) does not require resolution of CERCLA liability in particular. The statutory language of § 113(f)(3)(B) requires only the existence of a settlement resolving liability to the United States or a state "for some or all of a response action." Section 113(f)(3)(B) does not state that the "response action" in question must have been initiated pursuant to CERCLA — a requirement that might easily have been written into the provision. Furthermore, as

10

explained above, the legislative history that the Court of Appeals for the Second Circuit relied upon in reading the CERCLA-specific requirement into § 113(f)(3)(B) actually concerns the enactment of a different provision — § 113(f)(1).

We therefore agree with Trinity and the United States that § 113(f)(3)(B) does not require that a party have settled its liability under CERCLA in particular to be eligible for contribution. To begin with, we are persuaded by the lack of any indication to the contrary in the plain language of the statute itself. In addition, our case law in a related context compels this result. In United States v. Rohm & Haas Co., we considered whether 42 U.S.C. § 9607(a) (CERCLA § 107(a)), a CERCLA provision allowing the United States and others to recover the costs of overseeing waste removal, applies even when the waste removal is not undertaken pursuant to CERCLA. 2 F.3d 1265 (3d Cir. 1993), overruled on other grounds by United States v. E.I. Dupont De Nemours & Co., 432 F.3d 161 (3d Cir. 2005). There, we located "no support in the text or legislative history of CERCLA for the suggestion that identical oversight activity on the part of the government should be considered a removal if the government invokes CERCLA, but not a removal if other statutory authority is invoked." Id. at 1275.

In Rohm & Haas, we reasoned that this conclusion was particularly appropriate "given the similarity of the provisions of RCRA and CERCLA authorizing EPA to order private parties to conduct corrective activity." Id. That is, we held that the absence of a CERCLA-specific requirement in the text of § 107(a) was particularly noteworthy given the similarity between the remediation provisions of RCRA (the

11

scheme under which the waste cleanup at issue in Rohm & Haas was performed) and those of CERCLA. Such similarity is also found in the instant case, where the Pennsylvania statutes explicitly referred to in the Consent Order — the HSCA and LRA — bear a strong resemblance to CERCLA, and even make reference to CERCLA. This Court has observed, "[the defendant's] liability [under CERCLA] is neither greater nor lesser under the HSCA. . . . Indeed, the cost recovery and contribution provisions in HSCA are virtually identical to those in CERCLA." Agere Sys., Inc. v. Advanced Envtl. Tech. Corp., 602 F.3d 204, 236 (3d Cir. 2010) (quotation marks omitted).

The Consent Order, moreover, is also authorized under § 106(a) of Pennsylvania's LRA, which provides that "the remediation standards established under this act shall be considered as applicable, relevant and appropriate requirements for this Commonwealth under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 . . . and the Hazardous Sites Cleanup Act." 35 Pa. Stat. § 6026.106(a). The LRA also provides that "[a]ny person demonstrating compliance with the environmental remediation standards established in Chapter 3 shall be relieved of further liability for the remediation of the site under the statutes outlined in section 106 [35 Pa. Stat. § 6026.106(a)]," which include CERCLA. 35 Pa. Stat. § 6026.501(a). Accordingly, under Pennsylvania law, remediation pursuant to the LRA is remediation under CERCLA. Thus, the resolution of LRA claims necessarily means resolution of claims under CERCLA, alleviating the concern expressed by the Court of Appeals for the Second Circuit of "leaving open the  possibility that the DEC or EPA

12

could, at some future point, assert CERCLA or other claims." W.R. Grace, 559 F.3d at 91.[3]

We note, finally, the Court of Appeals for the Second Circuit appears to have begun to retreat from its holding in Consolidated Edison and W.R. Grace that, for the purposes of CERCLA § 113(f)(3)(B), a "response action" means a response action under CERCLA in particular. In resolving a different CERCLA issue in Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc., 596 F.3d 112 (2d Cir. 2010),[4] the Court

---

[3] In this case the Consent Order contains a section entitled "Department's Covenants Not to Sue," which expressly states that "the Department[] covenants not to sue or to take administrative action against Trinity for Response Costs, Response Actions, and injunctive relief arising from the release or threatened release of hazardous substances at and/or potentially migrating from the North Plant and/or South Plant." App. 55. This language is considerably broader than that found, for example, in W.R. Grace, where the court held that specific resolution of CERCLA claims is necessary for application of § 113(f)(3)(B). Compare W.R. Grace, 559 F.3d at 91 (releasing party from liability "pursuant to Article 27, Title 13, of the [New York Environmental Conservation Law]") with App. 55.

[4] In Niagara Mohawk, the court considered whether or not a consent order under § 113(f)(3)(B) applied to an enforcement action when the New York DEC specified that CERCLA liability was resolved. The specific issue in that case was whether the DEC had the authority to settle CERCLA claims at all, and the Niagara Mohawk court concluded that § 113(f)(3)(B) applied, as "New York is empowered to settle

13

of Appeals for the Second Circuit stressed that "states play a critical role in effectuating the purposes of CERCLA," id. at 126, and that "CERCLA views the states as independent entities that do not require the EPA's express authorization before they can act," id. at 127. Thus the Niagara Mohawk court underscored that CERCLA promotes state participation; indeed, § 113(f)(3)(B) itself applies to a party that has "resolved its liability to the United States or a State for some or all of a response action." CERCLA § 113(f)(3)(B) (emphasis added). The court cited the brief of the United States (also appearing as amicus curiae in Niagara Mohawk), which argued that "'[t]he settlement of federal and state law claims other than those provided by CERCLA fits within § 113(f)(3)(B) as long as the settlement involves a cleanup activity that qualifies as a 'response action' within the meaning of CERCLA § 101(25).'" Id. at 126 n.15 (quoting Brief of United States). Although the Niagara Mohawk Court was not called upon to address that question, which it referred to as "the Consolidated Edison/W.R. Grace problem," it did acknowledge that "there is a great deal of force to this argument given the language of the statute." Id. We agree, and therefore will vacate and remand the District Court's grant of summary judgment as to Trinity's § 113(f)(3)(B) claim.[5]

---

a PRP's CERCLA liability." Niagara Mohawk, 596 F.3d at 127.

[5] Trinity also raised on appeal the District Court's grant of summary judgment to CB&I on Trinity's CERCLA § 107(a) claim. However, at oral argument counsel for Trinity identified the § 107(a) claim as an alternative argument, indicating that it would abandon that claim if this Court were to vacate the grant of summary judgment on Trinity's

14

B.

Trinity also argues that the District Court erred in denying injunctive relief for its claim under RCRA. Section 7002(a)(1)(B) of RCRA provides that

> any person may commence a civil action on his own behalf . . . against any person . . . including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

42 U.S.C. § 6972(a)(1)(B). Although the District Court found that "there are disputed issues of material fact regarding the existence of an imminent and substantial danger at the Site," it nevertheless granted summary judgment to CB&I because it held there was "no meaningful relief available under RCRA in light of the Consent Order." App. 19-20.

This Court has held that to prevail under RCRA § 7002(a)(1)(B), a plaintiff must prove: (1) that the defendant is or was a "generator or transporter of solid or hazardous waste or one who was or is an owner or operator of a solid or hazardous waste treatment, storage, or disposal facility"; (2) that the defendant contributed to the "handling, storage,

---

§ 113(f)(3)(B) claim. Accordingly, we do not review the District Court's order as to the dismissal of the claim brought pursuant to § 107(a).

15

treatment, transportation, or disposal of solid or hazardous waste"; and (3) that the waste "may present an imminent and substantial endangerment to health or the environment." Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 399 F.3d 248, 258 (3d Cir. 2005). The District Court found that all three requirements of the Interfaith test were met. Trinity naturally does not challenge the District Court's findings, and CB&I does not either.

Despite finding that Trinity had proven the necessary elements of a § 7002(a)(1)(B) claim, the District Court denied Trinity relief under RCRA because it held that the Consent Order rendered any injunctive relief futile. App. 23. Specifically, the District Court held that, because the Consent Order required Trinity to remediate all contamination at the South Plant, "an injunction directing CBI to engage in the cleanup is not warranted." Id.

As the District Court correctly observed, two types of injunctions are available under § 7002(a)(1)(B): (1) a mandatory injunction that requires a responsible party to participate in cleanup and the proper disposal of waste; or (2) a prohibitory injunction restraining the party from further action violating RCRA. Meghrig v. KFC W., Inc., 516 U.S. 479, 484 (1996). The latter kind of injunction is, of course, unavailable in this case, since CB&I is no longer involved at the South Plant and thus cannot be prohibited from "further action" in violation of RCRA. As for the former, a mandatory injunction is an extraordinary remedy that is only granted sparingly by the courts. Communist Party of Ind. v. Whitcomb, 409 U.S. 1235, 1235 (1972) (noting that a mandatory injunction is an "extraordinary remedy [to] be employed only in the most unusual case."); United States v.

16

Spectro Foods Corp., 544 F.2d 1175, 1181 (3d Cir. 1976) ("The power to issue a preliminary injunction, especially a mandatory one, should be sparingly exercised."). We have noted that when mandatory injunctive relief is sought, "the burden on the moving party is particularly heavy." Punnett v. Carter, 621 F.2d 578, 582 (3d Cir. 1980). Indeed, the moving party's "right to relief must be indisputably clear." Communist Party, 409 U.S. at 1235.

The District Court determined that a mandatory injunction is unavailable to Trinity because the Consent Order already compels Trinity to institute remediation measures at the South Plant. The District Court relied largely on 87th Street Owners Corp. v. Carnegie Hill 87th Street Corp., 251 F. Supp. 2d 1215 (S.D.N.Y. 2002). There, the court held that, even though the plaintiff had established genuine issues of material fact as to its RCRA claim, the fact that "the actions that allegedly created the danger are in the past," and because "plaintiff has been unable to describe a single action that defendant could be ordered to take to reduce or eliminate any risk its past actions may have caused" that the state had not already undertaken, the court could not use its power to restrain in that context. Id. at 1219. That is, the 87th Street court appeared to hold, as the District Court in this case held, that a prohibitory injunction could not be ordered (since the defendant was not currently taking actions that could be prohibited or restrained), and that a mandatory injunction would require the court to exercise a broader power than RCRA § 7002(a)(1)(B) authorizes.

Section 7002(a)(1)(B) permits a district court "to order [a person who may have contributed to endangerment] to take such . . . action as may be necessary." The District Court

reasoned that it would be impossible to deem a mandatory injunction "necessary" for § 7002(a)(1)(B) purposes in a case like this one, in which a remedial scheme is already underway. See Belitskus v. Pizzingrilli, 343 F.3d 632, 650 (3d Cir. 2003) (striking part of injunction that "was not necessary"). We have not yet considered this issue in the RCRA context, although Trinity urges us to apply the ultimate holding of Interfaith, wherein we affirmed the grant of a RCRA injunction after the New Jersey Department of Environmental Protection ("NJDEP") had previously taken steps to order remediation of a contaminated site. However, as CB&I points out, we held in Interfaith that "a fair reading of the record casts strong doubt as to whether there is a [state-agency ordered] process to override," Interfaith, 399 F.3d at 267, since the district court had found that the defendant's "dilatory tactics and NJDEP's inability to deal effectively with those tactics" thwarted the remediation process and therefore did make an injunction "necessary" under the RCRA, id. at 267-68.

The Court of Appeals for the Fifth Circuit has cited the holding of 87th Street favorably, holding that where remedial "efforts have been ongoing, and absent a clear reason . . . to find them deficient, we see no error in the district court's conclusion that it could grant no further relief to the plaintiff beyond what is already being done." Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co., 704 F.3d 413, 431 (5th Cir. 2013). In Center for Biological Diversity, the court held that a plaintiff was not entitled to injunctive relief against a defendant where the Executive Branch was "charged with the responsibility to oversee the cleanup," and where there was no reason to make a determination that that cleanup scheme was deficient or ineffective. Id. In Interfaith, by contrast, just

18

such a determination was made, as we considered the "substantial breakdown in the agency process" to be significant in our decision to affirm the district court's order of injunctive relief.  Interfaith, 399 F.3d at 265.  In this case, Trinity has not contended that the remediation scheme put in place by the Consent Order is deficient or ineffective.

The Supreme Court has distinguished the remedial scheme created by RCRA from the CERCLA scheme in the following manner:  "RCRA is not principally designed to effectuate the cleanup of toxic waste sites or to compensate those who have attended to the remediation of environmental hazards."  Meghrig, 516 U.S. at 483.  "RCRA's primary purpose, rather, is to reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste" to "minimize the present and future threat to human health and the environment."  Id. (quotation marks omitted).  Trinity has not shown that future participation by CB&I in the remediation effort will aid in the minimization of such threats.  That is, Trinity has not shown that CB&I's participation is "necessary" as RCRA § 7002(a)(1)(B) requires, now that the conditions of the Consent Order are in place and appear to be effective.  Accordingly, we will affirm the District Court's grant of summary judgment to CB&I as to Trinity's request for an injunction under RCRA.

## C.

Trinity seeks, finally, our review of the District Court's decision not to exercise supplemental jurisdiction over Trinity's state-law claims.  The District Court declined to exercise its jurisdiction pursuant to 28 U.S.C. § 1367(c)(3)

19

in the context of its granting summary judgment as to all of Trinity's federal claims.  <u>See</u> 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."). Because our decision to remand this matter as to the CERCLA § 113(f)(3)(B) claim means that not all claims over which the District Court has original jurisdiction are dismissed, we will also vacate and remand the District Court's order as to supplemental jurisdiction, to give the District Court an opportunity to consider exercising its jurisdiction over the claims brought under state law.

IV.

For the foregoing reasons, we will affirm in part and vacate and remand in part.

20