NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4044
_____

ALEX SHADIE,
                                        Appellant

v.

HAZLETON AREA SCHOOL DISTRICT;
GLORIA FORTE
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 3-10-cv-02121)
District Judge: Honorable Malachy E. Mannion
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 8, 2014
_____

Before: SMITH, VANASKIE, and SHWARTZ, *Circuit Judges*

(Opinion Filed: September 10, 2014)
_____

OPINION
_____

VANASKIE, *Circuit Judge.*

Appellant Alex Shadie sued Appellee Hazleton Area School District (the

"District") for, among other things, discrimination on the basis of a disability under § 504

of the Rehabilitation Act, 29 U.S.C. § 794(a).  The District Court, finding that Shadie

failed to establish intentional discrimination, granted summary judgment in favor of the District on this claim. Because we conclude that Shadie was required to prove intentional discrimination by the District to recover compensatory damages, *see S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 261–62 (3d Cir. 2013), and failed to raise any genuine dispute of material fact on that point, we will affirm the District Court's order granting summary judgment in favor of the District on the § 504 claim.

## I.

Because we write primarily for the parties, we will recount only the facts essential to our discussion. During the 2007–08 school year, Alex Shadie, a student with autism and mild mental retardation, was enrolled in special education classes within the Hazleton Area School District. Shadie routinely had episodes in which he entered what the parties call "shut down mode," an autism-related behavior during which Shadie became largely nonresponsive to efforts at instruction or communication. At the crux of this case are three incidents in which Gloria Forte, a teacher's aide employed by the District, misguidedly tried to rouse Shadie from "shut down mode" with inappropriate verbal commands and physical contact.

First, on January 2, 2008, a relatively minor incident occurred in which Forte "knocked [Shadie's] feet [off] his chair." (App. 85). That physical contact, although characterized by Shadie's therapeutic staff support member as "inappropriate" and unnecessary, (App. 86), did not result in injury and was not immediately reported to the District's administrative staff. Second, on March 4, 2008, Forte grabbed Shadie by the

2

arm, shook him, and yelled at him. This incident was promptly reported to Carl Manfredi, the District's Director of Special Education, and discussed at a March 5 meeting between school administrators, Shadie's father, and his instructors. Third, on March 7, 2008, while Manfredi was out of town and before any thorough investigation into the March 4 allegations had occurred, Forte again yelled at Shadie, shook him, and struck him in the forehead with the palm of her hand.

Shortly after the March 7 incident, Forte was transferred to another classroom and had no further contact with Shadie. Shadie did not require medical or psychological treatment as a result of any of these incidents, nor did he miss any time at school. He contends that as a long-term result of Forte's abuse, however, his language ability regressed, he engaged in self harm, and he developed aggressive behavioral tendencies, ultimately resulting in his withdrawal from school in 2009.

Shadie commenced this lawsuit in state court on March 5, 2010 against the District and Forte. The District removed the action to federal court, after which Shadie filed a seven-count amended complaint, alleging (1) violations of the Fourteenth Amendment; (2) violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1482; (3) assault and battery against Forte; (4) intentional infliction of emotional distress against Forte; (5) breach of fiduciary duty; (6) negligence against Forte; and (7) violations of § 504 of the Rehabilitation Act. The District filed a motion to dismiss,

3

which the District Court granted as to all claims against the District except the IDEA

violations alleged in Count II and the § 504 violations alleged in Count VII.[1]

The District moved for summary judgment on the remaining claims in December

2012. In a Memorandum and Order filed April 22, 2013, the District Court held that all

claims predicated on the January 2, 2008 and March 4, 2008 incidents were barred by the

two-year statute of limitations. The Court also granted summary judgment with respect

to Shadie's claim for compensatory damages under § 504, finding that Shadie had failed

to produce evidence of intentional discrimination by the District.[2] Lastly, the Court

denied summary judgment on Shadie's IDEA claim, but limited the available remedy to

compensatory damages in the form of tuition reimbursement. Shadie later stipulated to

the dismissal of that claim. The District Court entered a final order of dismissal on

September 6, 2013. Shadie filed a timely notice of appeal.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction

under 28 U.S.C. § 1291. Our review of a district court's order granting summary

judgment is plenary. *Trinity Indus., Inc. v. Chi. Bridge & Iron Co.*, 735 F.3d 131, 134

(3d Cir. 2013). A grant of summary judgment is appropriate where the movant

---

[1] The rulings on the motion to dismiss are not contested in this appeal.

[2] That order also dismissed all claims against defendant Gloria Forte, who died prior to service of the amended complaint. Shadie does not contest that dismissal.

establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the evidence "'in the light most favorable to the nonmoving party.'" *Trinity Indus., Inc.*, 735 F.3d at 134–35 (quoting *Kurns v. A.W. Chesterton Inc.*, 620 F.3d 392, 395 (3d Cir. 2010)).

III.

The sole question presented here is whether the District Court erred by granting summary judgment on Count VII of the amended complaint, in which Shadie stated a claim under § 504 of the Rehabilitation Act for compensatory damages.[3] That statute provides:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a). To establish a claim under § 504, a plaintiff must demonstrate that he "(1) has a disability; (2) was otherwise qualified to participate in a school program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of [his] disability." *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176,

---

[3] In his preliminary identification of issues on appeal, (Supp. App. 58), Shadie alleged error as to the District Court's preclusion of certain remedies for his IDEA claim, and as to the statute-of-limitations-based dismissal of his claims predicated on the January 2, 2008 and March 4, 2008 incidents. In his opening appellate brief, however, Shadie makes no mention of these issues at all. We therefore consider those arguments waived under Rule 28(a) of the Federal Rules of Appellate Procedure. *See Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993).

189 (3d Cir. 2009). As we recently recognized in *Lower Merion*, 729 F.3d at 261–62, a plaintiff seeking compensatory damages on a § 504 claim must also prove that the discrimination at issue was intentional. Shadie's argument to the contrary, which fails even to mention the binding and directly applicable holding of *Lower Merion*, is without merit and warrants no in-depth discussion.

The "intentional discrimination" standard demands proof that, at a minimum, the school district exhibited "deliberate indifference" to the underlying act of discrimination. *Id.* at 263. To show deliberate indifference, the plaintiff must establish "(1) *knowledge* that a federally protected right is substantially likely to be violated . . . and (2) *failure to act* despite that knowledge." *Id.* at 265. Deliberate indifference "does not require a showing of personal ill will or animosity toward the disabled person," but "must be a deliberate choice, rather than negligence or bureaucratic inaction." *Id.* at 263 (quotation marks and citations omitted).

The substance of Shadie's § 504 claim is that the District's deliberate indifference to Forte's "physical and mental abuse," which occurred in response to his autism-related "shut down" episodes, denied him the benefit of a "safe and appropriate educational atmosphere." (App. 28–29.) Relevant here, Shadie contends that a genuine dispute of material fact exists as to the central question of whether the District exhibited deliberate indifference to Forte's abuse.

Viewing the evidence in the light most favorable to Shadie, the record reflects that he was subjected to three episodes of inappropriate verbal and physical contact, and that

6

this treatment stemmed from a classroom aide's inability to properly accommodate Shadie's disability. Like the District Court, we conclude that the record would not permit a jury to find that the District intentionally discriminated against Shadie. The January incident, for instance, was not brought to the attention of school administrators, and perhaps justifiably so, given that the event was relatively minor. In response to the more concerning March 4 incident, school officials immediately met with Shadie's mother and his instructors the next day, at which time District officials resolved to investigate further and consider remedial action. No evidence whatsoever exists that the District ignored or otherwise minimized that episode. And likewise, the evidence is uncontroverted that the District responded promptly and appropriately to the March 7 incident by removing Forte from the classroom and thus preventing further contact between her and Shadie. That Forte had not been removed from the classroom prior to March 7, under these circumstances, rises at most to the level of "negligence or bureaucratic inaction," which is insufficient to establish deliberate indifference. *Lower Merion*, 729 F.3d at 263.[4]

---

[4] In support of his argument for relief, Shadie directs us to *Vicky M. v. Northeastern Educational Intermediate Unit*, 689 F. Supp. 2d 721 (M.D. Pa. 2009). That opinion, which predated our own in *Lower Merion*, did not discuss or apply the concepts of intentional discrimination or deliberate indifference. More strikingly, a simple recounting of the alleged wrongdoing in that case serves to distinguish it:

> The allegations of abuse include: the use of bungee cords for restraint and discipline; the use of duct tape on students as restraints; leaving students restrained in a chair and on the floor for several minutes after the students had overturned the chair; using Rifton chairs for punishment or restraint;

In sum, we conclude that Shadie has failed to raise a genuine dispute of material fact as to intentional discrimination by the District. Because this is an essential element of the claim at issue, the District Court did not err in granting summary judgment in favor of the District and against Shadie on Count VII of the amended complaint.

IV.

For the aforementioned reasons, we will affirm the District Court's order of April 22, 2013.

---

> grabbing students by the ear or pinching noses causing bruising; grabbing students by the back of the neck; dragging students by the hair and arms; backhanding a student causing a bloody lip; screaming into the faces of students; squeezing students' hands as a punishment; crushing a student's fingers; stepping on students' insteps for intimidation; squeezing students' faces; striking a student in the head with a tissue box; depriving a non-verbal student of a picture communication system, preventing him from being able to communicate needs such as the bathroom; forcing a student to ride home for over an hour on the bus soaked in urine; and withholding food from a student as a punishment.

689 F. Supp. 2d at 727 (citations omitted).