**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3136
_____

ELIZABETH A. ROBINSON, Individually, and as Administrators of the Estate of I.R.
Deceased; WILLIAM E. ROBINSON, Individually, and as Administrators of the Estate
of I.R. Deceased,

> Appellants

v.

FORREST MARSHALL PEIRCE; POCONO TRANSPORTATION, INC.; NORTH
POCONO SCHOOL DISTRICT
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 3:10-cv-00398)
District Judge: Honorable Robert D. Mariani
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 20, 2014
_____

Before: CHAGARES, GREENAWAY, JR., and VANASKIE, *Circuit Judges*

(Opinion Filed:  September 29, 2014)
_____

OPINION
_____

VANASKIE, *Circuit Judge.*

Appellants Elizabeth and William Robinson, individually and behalf of I.R., their deceased minor son,[1] brought this action under 42 U.S.C. § 1983 against Appellee North Pocono School District (the "District") for its alleged part in causing an injury suffered by I.R. in a school-bus evacuation drill.[2] Specifically, the Robinsons seek relief by way of the "state-created danger" doctrine, which arises as a matter of substantive due process under the Fourteenth Amendment. The District Court, finding that the Robinsons failed to raise a genuine dispute of material fact on certain elements of their claim, granted summary judgment in favor of the District. Because we discern no error in the District Court's conclusion that the Robinsons failed to establish that the District violated their son's constitutional right to be free of abusive government action, we will affirm the grant of summary judgment in the District's favor.

I.

We write primarily for the parties, and thus state only the facts essential to our discussion. At the beginning of the 2006–07 school year, I.R., a legally blind twelve-year-old suffering from osteopetrosis, a bone marrow disease, was enrolled as a seventh grader within the North Pocono School District. I.R.'s disabilities left him with

_____

[1] I.R. died in October 2012, while this case was pending before the District Court. The District Court substituted the Robinsons, who were already parties in their individual capacities, as representatives of I.R.'s estate.

[2] The Robinsons also named as Defendants the school bus driver, Forrest Marshall Peirce, and his employer, Pocono Transportation, Inc., but settled their claims against them while the matter was still pending in the District Court.

significant physical limitations, which the District addressed annually through provisions outlined in an Individualized Education Program. These accommodations included additional time for assignments, excusal from participation in contact sports during gym class, and blindness-related measures such as large-print texts and instruction in the use of a white cane. District administrative personnel and many, if not all, of I.R.'s teachers were aware of his disabilities and the foregoing accommodations.

Under Pennsylvania state law, school districts must conduct, on school grounds, a biannual "emergency evacuation drill[]" in which all students are taught or reminded how to properly exit a school bus "in the event of fires or accidents." 24 Pa. Cons. Stat. § 15-1517(d). During the drill, students practice exiting the bus by way of the rear emergency exit door, rather than through the customary side door. This involves navigating an approximately four-foot drop from the floor of the school bus to the ground. The Pennsylvania School Bus Driver's Manual ("Manual") requires that the bus driver monitor the execution of the drill from the rear of the bus, and instructs drivers that participation in the drill "should not be required" for "[s]tudents who are injured, disabled, or in a condition that may be aggravated by jumping out of the bus . . . ." (App. 6 (quotation marks omitted).)

The District did not maintain any set policy regarding accommodations for disabled students during bus-evacuation drills, or any system for tracking which students might need special assistance during the drills. As a sixth grader, I.R. participated in and completed the drill twice, although the parties dispute whether I.R. received assistance

3

from District staff on those occasions. The District maintained that its policy was to provide additional drill-related supervision—i.e., beyond the supervision of the bus driver alone—for students in kindergarten through fifth grade, but not for students in sixth grade and above. I.R. testified at deposition, however, that he had been assisted by a teacher during a drill when he was in sixth grade, and for purposes of this analysis, we assume that testimony is correct.

On September 19, 2006, the date of the first drill of the 2006-07 school year, I.R. was aboard a school bus operated by Pocono Transportation, Inc., and driven by its employee, Forrest Peirce. No adults were present at the time of the drill other than Peirce, who was not I.R.'s usual bus driver and had not been told about I.R.'s disabilities. Peirce, who had been a school bus driver since 1971, made no effort to ascertain whether any disabled or injured students should be excused from participation. In further contravention of the Manual, Peirce remained seated at the front of the bus during the drill instead of supervising the students' exit from the rear emergency exit door.

It was under these circumstances that I.R., without direct supervision, attempted to seat himself on the floor of the bus at the cusp of the exit door and jump down to the ground. Instead of landing safely, however, I.R. dropped awkwardly to the pavement and suffered a broken femur, which required him to be airlifted to a nearby hospital for medical treatment.

The Robinsons contend that the District evidenced such deliberate indifference to the safety of their son that it violated his right to be free from abusive government action

that infringes the liberty interest in personal bodily integrity.[3]  The District Court, acting

on the District's summary judgment motion, found that the evidence did not support a

substantive due process claim and awarded judgment in the District's favor.  This appeal

followed.

## II.

The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367(a).

We have jurisdiction under 28 U.S.C. § 1291.  Our review of the District Court's order

granting summary judgment is plenary.  *Trinity Indus., Inc. v. Chi. Bridge & Iron Co.*,

735 F.3d 131, 134 (3d Cir. 2013).  A grant of summary judgment is appropriate where the

movant establishes "that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  We view the

evidence "'in the light most favorable to the nonmoving party.'"  *Trinity Indus., Inc.*, 735

F.3d at 134–35 (quoting *Kurns v. A.W. Chesterton Inc.*, 620 F.3d 392, 395 (3d Cir.

2010)).

---

[3] The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.  "Individuals have a constitutional liberty interest in personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008).  It has been recognized that there is a substantive component to the Due Process Clause such that it "prevents the Government from abusing its power or using it as an instrument of oppression."  *Ye v. United States*, 484 F.3d 634, 636 (3d Cir. 2007).  The Robinsons' claim implicates this aspect of the Fourteenth Amendment's Due Process Clause.

III.

The sole question presented here is whether the District Court erred by granting summary judgment on the Robinsons' state-created-danger claim against the District. We have recognized the general rule that "[t]here is no affirmative right to governmental aid or protection under the Due Process Clause of the Fourteenth Amendment." *Ye*, 484 F.3d at 636. Nonetheless, injury caused by a state actor's affirmative intervention in a plaintiff's affairs may, under limited circumstances, rise to the level of a substantive due process violation. The essential elements of such a claim include:

> (1) the harm ultimately caused was foreseeable and fairly direct;
>
> (2) a state actor acted with a degree of culpability that shocks the conscience;
>
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006) (internal citations and quotation marks omitted). The District Court here cited failures of proof as to the second and fourth factors, and thus granted the District's motion for summary judgment.

We focus our analysis on whether the record supports a finding that the District's degree of culpability shocks the conscience. "The exact degree of wrongfulness

necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case." *Miller v. City of Phila.*, 174 F.3d 368, 375 (3d Cir. 1999). A plaintiff faces the highest bar where the state actor faces a "'hyperpressurized environment'" requiring a snap judgment; in such cases, we permit recovery only when the state actor displays an actual intent to cause harm. *Sanford v. Stiles*, 456 F.3d 298, 309 (3d Cir. 2006) (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 508 (3d Cir. 2003)). By contrast, "where deliberation is possible and officials have the time to make 'unhurried judgments,' deliberate indifference is sufficient." *Id.* (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 853 (1998)). Importing aspects of Eighth Amendment jurisprudence, we have defined "deliberate indifference" as requiring "conscious[] disregard [of] 'a substantial risk of serious harm.'" *Ziccardi v. City of Phila.*, 288 F.3d 57, 66 (3d Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). Regardless of the standard applied, "[m]ere negligence is not enough to shock the conscience." *Sanford*, 456 F.3d at 311.

The Robinsons challenge District policies and practices and the lack thereof, rather than a single decision made by a particular state actor in the heat of the moment. Thus, they must come forward with proof that the District exhibited deliberate indifference to a substantial risk of serious harm to I.R. On this point, the Robinsons emphasize that District staff members were well aware of I.R.'s disabilities, having taken other measures to limit I.R.'s exposure to potentially injurious physical contact (such as that which might occur in gym class), and had reason to expect that I.R. would be a participant in the

evacuation drill on September 19, 2006. The Robinsons argue that based on these facts, a jury could find that the District's failure to provide its own supervisory personnel or, at a minimum, to notify Peirce of I.R.'s special needs, constitutes deliberate indifference.

We agree with the District Court's conclusion, however, that these details, when viewed in light of other uncontroverted evidence, are insufficient to establish deliberate indifference. First, the fact that the District did not assign a teacher to assist I.R. during the evacuation drill does not equate to, or even necessarily suggest, indifference on the part of the District. Instead, the District was reasonably entitled to expect that Peirce, an experienced bus driver, would comply with his obligations by seeking out and excusing disabled students from participation in the drill, and by personally supervising the evacuation from an appropriate vantage point. Had Peirce done these things, any risk of injury presented to I.R. by the evacuation drill would have been greatly lessened. Moreover, there is no evidence that District staff intentionally decided not to provide Peirce with a list of students with special needs. Instead, the record suggests that this omission was the product of a bureaucratic oversight, akin to mere negligence—which is insufficient to establish deliberate indifference.

The Robinsons also highlight the District's choice to provide categorical supervision for younger students during evacuation drills, but not for older students such as I.R. As noted above, however, the District simply had no reason to believe that older students—even those with disabilities, such as I.R.—would be exposed to a substantial

8

risk of serious injury when participating in the drill under the supervision of a responsible bus driver.

In sum, we conclude that the Robinsons have failed to raise a genuine dispute of material fact as to whether the District's conduct would shock the conscience. Because this is an essential element of the claim at issue, the District Court did not err in granting summary judgment in favor of the District and against the Robinsons on their state-created-danger claim.[4]

IV.

For the aforementioned reasons, we will affirm the District Court's order of September 10, 2012.

---

[4] The District Court devoted a lengthy portion of its analysis to the alternative conclusion that that "this case provides yet another example of state inaction, rather than an instance of misuse of state authority that placed I.R. in greater danger than he otherwise would have been in." (App. 24.) Because we conclude that the District Court properly granted summary judgment based on the absence of evidence of deliberate indifference, we take no position on whether the record here contains the requisite degree of affirmative state action to sustain a state-created-danger claim.