NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4113
_____

WEST PALM BEACH HOTEL, LLC

v.

ATLANTA UNDERGROUND, LLC,
            Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3-14-cv-01063)
District Judge: Honorable Anne E. Thompson

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 4, 2015

Before: RENDELL, HARDIMAN, and VANASKIE, *Circuit Judges*

(Filed: August 14, 2015)
_____

OPINION[*]
_____

VANASKIE, *Circuit Judge*.

This case involves a breakdown in negotiations for the sale of a hotel (the Hotel

Property) at the West Palm Beach Airport, in Florida. Appellant Atlanta Underground,

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

LLC (AU) contends that Appellee West Palm Beach Hotel, LLC (West Palm) violated the terms of a Letter of Intent (LOI) by increasing the hotel's sale price shortly before a formal contract was due to be signed. The District Court granted summary judgment on all claims in favor of West Palm. We will affirm.

I.

In October 2013, West Palm received an expression of interest in the Hotel Property from Frontier Development & Hospitality Group, LLC, an affiliate of AU under the same ownership.[1] AU had recently sold a similar property and sought to complete a "like-kind" exchange under 26 U.S.C. § 1031 prior to March 18, 2014, which, if not completed, would result in a $2.4 million capital-gains tax assessment.[2] West Palm, too, had already purchased a similar property as part of a "reverse like-kind" exchange (i.e., one in which the purchase of a property precedes the sale of an already-held like-kind property), and thus needed to sell the Hotel Property by April 22, 2014. Both parties were aware of one another's expectations in this regard, and of the relative urgency of completing a firm contract for sale by mid-January of 2014, which would leave the requisite period of several weeks for inspection and closing.

---

[1] West Palm is a Florida limited liability company with its principal place of business in New Jersey. AU is a Delaware limited liability company with its principal place of business in Washington, D.C., and has members with citizenship in Georgia, Virginia, Connecticut, and Washington, D.C.

[2] Under § 1031, gains or losses from an exchange of property are not recognized if, within 180 days of the sale, the proceeds are used to purchase "property of like kind which is to be held either for productive use in a trade or business or for investment." 26 U.S.C. § 1031(a)(1).

2

On November 3, 2013, after a brisk negotiating period, West Palm and AU signed the LOI prepared by counsel for AU.[3]  The LOI contemplated a sale price of $13.75 million, and provided that AU would have a 45-day period from the date of execution of a formal contract in which it could inspect the Hotel Property and cancel the contract at its discretion, followed by a closing 30 days later.  The LOI also contained an "exclusivity" provision in which West Palm agreed that it would cease any existing negotiations for the sale of the Hotel Property to a third party, and refrain from seeking further third-party buyers.  Finally, the LOI contained the following language:

> 13.  Letter of Intent Only.  Please understand that this letter is intended to be and only is an indication as to the basic terms of the proposed transaction and not a binding agreement, and it is understood that if a binding Contract is not executed between the parties on or TDB [sic] date then in such event this letter shall be null and void and the undersigned shall be relieved from any obligations or liabilities in connection herewith . . . .  Both Seller and Purchaser agree to act in good faith and exercise due diligence in negotiating and executing the Contract.

App. 125.

For the next two months, the parties exchanged draft contracts and continued negotiations relating to the sale.  In an email on January 12, 2014—the day before the parties contemplated signing a formal contract—counsel for West Palm emailed counsel for AU to say that West Palm would sell only at an increased price of $14.25 million,

---

[3] Technically, West Palm's counterparty at the time was Frontier, which later assigned its rights and obligations under the LOI to AU.  The parties agree, however, that the actions of Frontier are attributable to AU for purposes of this litigation.

$500,000 more than the price set forth in the LOI. West Palm cited improved financial performance at the Hotel Property during the intervening two months, as well as an unsolicited offer of $14.5 million from a third party. AU responded that West Palm was prohibited from modifying the LOI purchase price. West Palm later retracted its assertion that it had received an unsolicited offer, and characterized that representation as an inadvertent mistake.

On January 21, after a week of fruitless discussions as to whether the price term remained open to negotiation, West Palm sought a declaratory judgment in New Jersey Superior Court establishing that West Palm had no obligation to sell the Hotel Property to AU at any price. At the same time, West Palm suggested that the parties could still accomplish their tax-related goals by entering into a contract at the higher price of $14.25 million, but with $500,000 placed into escrow, subject to disbursement to the prevailing party after arbitration or mediation. AU rejected West Palm's proposal. On February 19, AU removed to federal district court and filed counterclaims for specific performance and money damages. On March 3, AU moved for summary judgment on its counterclaims for specific performance.

On April 2, 2014, the District Court held that the LOI was not an enforceable agreement and denied AU's motion for summary judgment on its counterclaim for specific performance. On April 10, West Palm executed a formal contract for the sale of the Hotel Property to a different buyer at a price of $15 million, and closed that transaction on April 22, in time for West Palm to meet its tax-savings deadline.

4

On April 25, West Palm moved for summary judgment on AU's remaining counterclaims. Along with its response, AU filed an affidavit under Federal Rule of Civil Procedure 56(d) in which it requested discovery on a multitude of issues, including whether West Palm believed the terms of the LOI were binding, whether West Palm knew that AU was under financial pressure to make a deal before its tax-savings deadline, and whether West Palm secretly negotiated with an alternative buyer in violation of the LOI's exclusivity provision. In an opinion filed September 18, 2014, the Court granted summary judgment in favor of West Palm on the remaining claims. AU timely appealed.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1332(a). We have appellate jurisdiction under 28 U.S.C. § 1291. Our review of the District Court's order granting summary judgment is plenary. *Trinity Indus., Inc. v. Chi. Bridge & Iron Co.*, 735 F.3d 131, 134 (3d Cir. 2013). We view the evidence "'in the light most favorable to the nonmoving party.'" *Id.* at 134–35 (quoting *Kurns v. A.W. Chesterton Inc.*, 620 F.3d 392, 395 (3d Cir. 2010)). Summary judgment is appropriate where the movant establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

III.

A.

This case implicates the question of when a party is bound by terms stated in a signed letter of intent that itself is intended as the precursor to a more formal contract of sale. Specifically, we must consider (1) whether the LOI bound West Palm to sell the Hotel Property to AU for $13.75 million, such that West Palm is liable for damages; and (2) even if not, whether West Palm violated the LOI's good-faith clause in any other respect. Because this case arises under diversity jurisdiction, we must apply substantive state law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Although the forum state is New Jersey, the case centers on the transfer of Florida real estate between parties with complex citizenship. In its opinion of April 2, 2014, the District Court concluded that Florida law controls, and neither party asks us to revisit that issue.[4]

B.

AU's first claim is that the LOI obligated West Palm to negotiate in good faith toward sale of the Hotel Property at a price of $13.75 million. In AU's view, West Palm's attempts to increase the sale price constituted a breach of the LOI. Under Florida law, "[a] meeting of the minds of the parties on all essential elements is a prerequisite to the existence of an enforceable contract, and where it appears that the parties are

---

[4] AU does not appear to disagree with West Palm's assertion that "with respect to the relevant legal issues, the law of both [Florida and New Jersey] is the same." West Palm's Br. at 31 n.3. Both parties also rely extensively on federal jurisprudence as well.

continuing to negotiate as to essential terms of an agreement, there can be no meeting of the minds." *de Vaux v. Westwood Baptist Church*, 953 So. 2d 677, 681 (Fla. Dist. Ct. App. 2007) (internal quotation marks omitted). "[W]hether the parties intended to form a binding contract is determined by examining the language of the document in question and the surrounding circumstances." *Midtown Realty, Inc. v. Hussain*, 712 So. 2d 1249, 1251–52 (Fla. Dist. Ct. App. 1998).

The parties agree that the appropriate framework for assessing whether certain elements of a preliminary agreement have binding effect is provided by *Teachers Insurance and Annuity Ass'n v. Tribune Co.*, 670 F. Supp. 491, 498 (S.D.N.Y. 1987). In that case, which has served as the template for assessing similar claims in state and federal courts across the country, Judge Leval explained:

> In seeking to determine whether such a preliminary commitment should be considered binding, a court's task is, once again, to determine the intentions of the parties at the time of their entry into the understanding, as well as their manifestations to one another by which the understanding was reached. Courts must be particularly careful to avoid imposing liability where binding obligation was not intended. There is a strong presumption against finding binding obligation in agreements which include open terms, call for future approvals and expressly anticipate future preparation and execution of contract documents. Nonetheless, if that is what the parties intended, courts should not frustrate their achieving that objective or disappoint legitimately bargained contract expectations.
>
> . . .
>
> The . . . first and most important factor looks to the language of the preliminary agreement for indication whether the

7

> parties considered it binding or whether they intended not to be bound until the conclusion of final formalities.

*Id.* at 499. *See also Stouffer Hotel Co. v. Teachers Ins. and Annuity Ass'n*, 737 F. Supp. 1553, 1559 (M.D. Fla. 1990) (applying *Tribune* to Florida contract dispute).

AU's main argument is that the LOI contains many apparently "closed" terms, i.e., specific pricing figures, dates, and other firm provisions. AU also emphasizes that during negotiations, both parties were aware of one another's reliance on the proposed transaction as a necessary step in their respective tax-savings strategies. According to AU, the LOI constituted a nearly complete agreement for the sale of the Hotel Property, with only a few relatively minor details remaining to be ironed out and much riding for both parties on successful completion of the deal.

The LOI's crucial term, however, is the explicit disclaimer contained in ¶ 13, which rebuts the notion that the document's provisions—even those conveyed in precise financial terms—were in any sense final: "[T]his letter is intended to be and only is an indication as to the basic terms of the proposed transaction and not a binding agreement, and it is understood that if a binding Contract is not executed between the parties on or TDB [sic] date then in such event this letter shall be null and void and the undersigned shall be relieved from any obligations or liabilities in connection herewith." App. 125. The language is utterly unambiguous. Further, AU, as the drafting party, could have structured the LOI in such a way as to ensure that certain aspects of it were binding; it did not. Instead, the inclusion of ¶ 13 compels precisely the opposite conclusion, i.e., that the

8

parties affirmatively intended not to be bound. *See Tribune*, 670 F. Supp. at 499 ("[A] party that does not wish to be bound at the time of the preliminary exchange of letters can very easily protect itself by not accepting language that indicates a 'firm commitment' or 'binding agreement.'").

Accordingly, we conclude that the LOI was not an enforceable contract for the sale of the Hotel Property and that AU has failed to raise a genuine dispute of material fact on its claim for damages based on this breach-of-contract theory. We will affirm the District Court's grant of summary judgment in this respect.

C.

AU's second argument is that West Palm was obligated to negotiate in good faith toward a sale of the Hotel Property based on the LOI's requirement that the parties "act in good faith and exercise due diligence in negotiating and executing the Contract [for sale of the Hotel Property]." App. 125. In AU's view, a jury could find that West Palm acted in bad faith by insisting on an increased price while knowing that AU would be forced to choose between completing the deal on less favorable terms and losing its expected tax savings.

Many jurisdictions recognize a cause of action for breach of contract even where the only agreed-upon contractual term is the duty to negotiate in good faith toward a final agreement. *See, e.g.*, *Butler v. Balolia*, 736 F.3d 609, 614 (1st Cir. 2013) (listing cases). To breach that duty, a party must engage in "deliberate misconduct," such as reneging on "closed" contractual terms, imposing unreasonable terms solely in the hope of scuttling a

9

deal, or—as AU alleges here—exploiting a counterparty's sunk costs. *See, e.g.*, *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 96 F.3d 275, 279–80 (7th Cir. 1996) (Posner, J.). By contrast, a seller's late demand for an increased sale price is not made in bad faith where it "reflect[s] the market value of the company at the time of actual sale." *Id.* at 279. *See also L-7 Designs, Inc. v. Old Navy, LLC*, 964 F. Supp. 2d 299, 307–08 (S.D.N.Y. 2013).

Like the District Court, we conclude that two facts in the record preclude a reasonable jury from finding that West Palm acted in bad faith here. First, to succeed on its claim that West Palm engaged in an impermissible "squeeze play," AU would have to prove that West Palm lacked a legitimate financial justification for its increased demand. Undisputed evidence exists, however, that the increased demand was supported by a corresponding increase in the market value of the Hotel Property during the course of negotiations—as shown by the April 2014 sale of the Hotel Property to a sophisticated third-party buyer for $15 million. In light of that evidence, a reasonable jury would be unable to find that West Palm lacked a financial basis for its demand for $14.25 million from AU. Second, West Palm offered AU the opportunity to hedge its position by purchasing the Hotel Property for $14.25 million, but with $500,000 placed into escrow, to be awarded to the prevailing party in a later dispute-resolution process.[5] That offer, if

---

[5] AU argues that evidence of this offer was inadmissible under Federal Rule of Evidence 408, which precludes the admission of statements made during the course of settlement negotiations "to prove or disprove the validity or amount of a disputed claim . . . ." Fed. R. Evid. 408(a). The Rule also provides, however, that "[t]he court may admit

accepted, would have allowed AU to accomplish its tax-savings goals without forfeiting its legal claim to the lower price. Taken together, these facts would preclude a reasonable jury from finding that West Palm's price increase was an impermissible effort to exploit AU's sunk transaction costs.[6]

Accordingly, we will affirm the District Court's order granting summary judgment in favor of West Palm on AU's counterclaims alleging a breach of the contractual duty to negotiate in good faith.

---

this evidence for another purpose." Fed. R. Evid. 408(b). Here, West Palm contends only that the evidence demonstrates its own good faith. Accordingly, we conclude that the evidence was properly considered.

[6] AU faults the District Court for granting West Palm's motion for summary judgment before the conclusion of discovery despite AU's affidavit under Federal Rule of Civil Procedure 56(d), which permits a court to allow additional time for discovery where the "nonmovant shows . . . that, for specified reasons, it cannot present facts essential to justify its opposition . . . ." Fed. R. Civ. P. 56(d). We have recently reiterated our longstanding position that applications for discovery under Rule 56(d) are usually granted "as a matter of course," and "[i]f discovery is incomplete, a district court is rarely justified in granting summary judgment, unless the discovery request pertains to facts that are not material to the moving party's entitlement to judgment as a matter of law." *Shelton v. Bledsoe*, 775 F.3d 554, 568 (3d Cir. 2015) (internal quotation marks and citations omitted).

While the better practice here would have been to deny the motion with an explanation, we cannot find reversible error in the Court's having ignored the request because we conclude that the requested discovery pertained to facts that would not have materially affected West Palm's entitlement to summary judgment. The existing record established that West Palm had a legitimate financial basis for its increased demand and that West Palm offered AU the opportunity to close the deal while still preserving its legal claim to the lower price and achieving its tax-savings goals. None of the information sought by AU would have undermined those facts, and thus would not have affected the outcome on summary judgment.

## IV.

For the foregoing reasons, we will affirm the District Court's judgment of September 18, 2014.