Nathaniel BLACKWELL, Appellant

v.

Howard ESKIN, WCAU–TV, d/b/a 10 NBC, NBC Stations Management, Inc., NBC Stations Management II, Inc., NBC—Subsidiary (WCAU–TV), L.P., NBC News Productions, Inc., National Broadcasting Company, Inc., National Broadcasting Company Holding, Inc. and General Electric Company, Appellee.

Superior Court of Pennsylvania.

Argued Aug. 29, 2006.

Filed Jan. 18, 2007.

David A. Yanoff, Philadelphia, for appellant.

Amy B. Ginensky, Philadelphia, for appellees.

BEFORE: KLEIN, BOWES and KELLY, JJ.

OPINION BY KELLY, J.:

¶ 1 This is an appeal from an order entering summary judgment in an action by a former basketball player/coach against an NBC sports broadcaster, the network, its local affiliate, subsidiaries, and management based on claims of defamation, false light invasion of privacy, and interference with prospective contractual relations. We affirm.

¶ 2 Appellant, an ex-NBA player and assistant basketball coach at Temple University, was placed on indefinite suspension from his employment after missing scheduled games in March of 2003.[1] His

---

1. Appellant resigned his position shortly thereafter.

absences were due to an admitted cocaine habit, and noted during a post-game television broadcast in which Appellee reported that Appellant's substance abuse had become "so bad [Appellant] was involved in a theft problem last year in the team's locker room." (Appellant's Exhibit 1 to Motion for Summary Judgment at ¶¶ 30, 31).

¶ 3 The information concerning the theft was provided to Appellee by Charles Campbell, a Temple police officer of 30 years' standing assigned to the men's basketball team. Because the drug use is admitted, the theft reference provides the sole basis for this suit in which Appellant advanced claims that the accusation of his having performed an illegal act was a deliberate, knowing falsehood, intended to portray him as preying on students to support his cocaine habit.

¶ 4 Appellee moved for summary judgment on the basis that Appellant failed to meet the legal requirements for his claims to proceed; the trial court agreed, and this appeal followed.

> In reviewing a grant of summary judgment, an appellate court may disturb the order of the trial court only where there has been an error of law or a clear or manifest abuse of discretion. Nevertheless, the scope of review is plenary; the appellate court shall apply the same standard for summary judgment as the trial court.
>
> \* \* \* \* \* \*
>
> The record is to be viewed in the light most favorable to the nonmoving party, and all doubts as to the presence of a genuine issue of material fact must be resolved against the moving party.

*Albright v. Abington Memorial Hospital,* 548 Pa. 268, 696 A.2d 1159, 1165 (1997) (citations omitted).

¶ 5 To prove defamation, it must be shown that a challenged statement "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third parties from associating or dealing with him." *Tucker v. Philadelphia Daily News,* 577 Pa. 598, 848 A.2d 113, 124 (2004) (quoting *Birl v. Philadelphia Electric Company,* 402 Pa. 297, 167 A.2d 472, 475 (1960)). "It is not enough that the victim of the [statements] ... be embarrassed or annoyed, he must have suffered the kind of harm which has grievously fractured his standing in the community of respectable society." *Tucker, supra* (quoting *Scott–Taylor v. Stokes,* 425 Pa. 426, 229 A.2d 733, 734 (1967)). Whether the contested statements are capable of defamatory meaning is a question of law for the court. *Tucker, supra* at 123.

¶ 6 When the plaintiff is a public figure, a status that Appellant concedes, he must prove that the statements he characterizes as defamatory were made with actual malice, that is, the speaker either knew that they were false, or recklessly disregarded their falsity. *Id.* at 130. The burden of proof imposed is substantial, as "[t]he actual malice standard goes so far as to forbid imposition of liability even in those instances where the defendant negligently publishes false, defamatory statements about a public figure or public official." *Norton v. Glenn,* 580 Pa. 212, 860 A.2d 48, 56 (2004), *cert. denied,* 544 U.S. 956, 125 S.Ct. 1700, 161 L.Ed.2d 539 (2005). Indeed, "[f]ailure to check sources, or negligence alone, is simply insufficient to maintain a cause of action for defamation. Recklessness generally and in the context of actual malice is not easily shown." *Tucker, supra,* at 135. Moreover, establishment of a defamation claim requires clear and convincing evidence, the highest level of proof for civil claims. *Bartlett v. Bradford Publishing, Inc.,* 885 A.2d 562, 566 (Pa.Super.2005) (citation omitted). A showing of actual malice requires "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Curran v. Philadelphia*

*Newspapers, Inc.,* 376 Pa.Super. 508, 546 A.2d 639, 642 (1988), *appeal denied,* 522 Pa. 576, 559 A.2d 37 (1989) (quoting *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968)).

 ¶ 7 Appellant argues that his claim was amply demonstrated by evidence of actual malice, indeed, purposeful avoidance of the truth on Appellee's part, and by evidence of the damaging repercussions of Appellee's statement. Specifically, Appellant disparages Appellee's intentions; accuses Appellee of deliberately failing to investigate the accuracy of the theft allegation, and thus of broadcasting "rumor"; disputes the legitimacy of both the form and content of Officer Campbell's information as well as impugning his character and mental health; attempts to disassociate drug abuse from theft;[2] and recounts the putative effects of the theft reference. We are unpersuaded.

¶ 8 Appellee testified that he received information concerning Appellant's drug abuse, as well as his alleged involvement in theft(s), during several conversations with Officer Charles Campbell, whom he believed to be both trustworthy, and, as a provider of security for the basketball team, privy to such information. (Deposition of Howard Eskin at 57, 58). Appellee also described a conversation with Temple's Director of Athletics, Bill Bradshaw, who became evasive when Appellant's drug problem was mentioned. *(Id.* at 43). Officer Campbell had voiced to Appellee his own belief that Appellant's drug use was being covered up by the head coach, John Chaney. *(Id.* at 51, 55).

¶ 9 Appellant attempts to neutralize Appellee's testimony concerning his acceptance of the accuracy of Officer Campbell's information by asserting that actual malice is discernible in Appellee's "reporting of this vaguely conveyed second-hand rumor as fact," (Appellant's Brief at 32), *"knowing it* was nothing of the sort." (Id. n. 22) (emphasis original). This assertion, reprised throughout Appellant's brief, is in turn based on the repeatedly voiced claim that because Officer Campbell was not the original source of the information, Appellee's publication of it must necessarily be demonstrative of actual malice. However, as noted above, even were Appellee to be deemed negligent for failure to investigate, either by obtaining independent confirmation of his information or consulting other, possibly more reliable sources, that finding would be insufficient to demonstrate actual malice. *Tucker, supra; Norton, supra; Weaver v. Lancaster Newspapers,* 875 A.2d 1093, 1097 (Pa.Super.2005), appeal granted in part on other grounds, 586 Pa. 480, 895 A.2d 527 (2006). In other words, Appellee's merits as a journalist are irrelevant.

 ¶ 10 Appellant expatiates further on this theme by contending that Officer Campbell, whom he describes, inaccurately, as a security guard (Appellant's Brief at 16), suffered from personal problems[3]

---

**2.** Appellant credits his expert witness, Glenn Guzzo, a journalism consultant and trainer, with the pronouncement that "while substance abuse is a part of life and of sports, theft is not." (Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment at ¶ 8). The trial court found otherwise, as do we. Moreover, Appellant takes umbrage at what he terms Appellee's "unbridled arrogance in stereotyping all people struggling with substance abuse as criminals." (Appellant's Memorandum of Law in

Support of Plaintiff's Response in Opposition to Defendant's Summary Judgment Motion at 10). We would remind him that, like theft, cocaine purchase and possession are criminal offenses. *See* 35 P.S. § 780.113(a)(16), (19).

**3.** Temple's Vice President for Operations, William Bergman, testified that Officer Campbell was a trained municipal police officer, licensed to carry the weapon which the University supplied. (Deposition of William T. Bergman at 25). Appellant also alleged that

which rendered his information so inherently unreliable that Appellee knew or should have known confirmation from some other source was required. However, as the trial court points out, "[t]here has been no evidence presented to suggest that [Appellee] knew of any reason to question Officer Campbell's credibility or reliability." (Trial Ct. Op. at 5) (footnote omitted). Moreover, despite Appellant's further assertion that Officer Campbell's information was motivated by a grudge against Temple, "evidence of ill will or a defendant's desire to harm the plaintiff's reputation, although probative of the defendant's state of mind, without more, does not establish 'actual malice.'" *Lewis v. Philadelphia Newspapers, Inc.,* 833 A.2d 185, 192 (Pa.Super.2003), *appeal denied,* 577 Pa. 690, 844 A.2d 553 (2004).

 ¶ 11 Appellant also casts aspersions on the affidavit provided by Officer Campbell to confirm that he provided the information to Appellee, insisting that "it is, legally, no 'Affidavit' at all." (Appellant's Brief at 10 n. 6). However, as Appellee points out, Pa.R.C.P. 76 provides in pertinent part:

> "affidavit," a statement in writing of a fact or facts, signed by the person making it, that ... is unsworn and contains a statement that it is made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities[.]

As Officer Campbell's document contains this language, it qualifies as an affidavit.

¶ 12 As to Appellant's attempt to separate the issue of his drug use from the theft, as the trial court points out, the theft report "did not occur in isolation." (Trial Ct. Op. at 18) Indeed the reference charac-

terized as defamatory was integral to Appellee's much longer commentary on Appellant's substance abuse problem and its direct result, that is, his absences from games. As the trial court observes,

> it does not strain credulity to think that an assistant coach who engages in an illegal drug habit and who was so out of control that he was missing games and risking his job, might also engage in other illegal behavior like theft to support his cocaine habit. The criminal courts abound with cases of individuals who have taken this unfortunate path. The issue is not whether the statement is true but whether [Appellee] knew that the statement was false or probably false.

*(Id.).*

 ¶ 13 Finally, a claim is raised as to the allegedly destructive effects of the theft reference in "compromis[ing] Appellant's employability," (Appellant's Brief at 30), that is, in interfering with his "prospective economic advantage and/or contractual relations." *(Id.* at 44).

The elements of a cause of action for intentional interference with a contractual relation, whether existing or prospective, are as follows:

(1) the existence of a contractual, or prospective contractual relation between the complainant and a third party;

(2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;

---

Officer Campbell was on suspension at the time of the broadcast. (Plaintiff's Response at 2). The suspension had ended at the end of 2002 or the beginning of 2003, well prior to the broadcast, with Mr. Bergman's approval.

The month following the broadcast, at Temples' request Officer Campbell returned to duty from medical leave for a wrist injury, and resigned some time thereafter.

(3) the absence of privilege or justification on the part of the defendant; and

(4) the occasioning of actual legal damage as the result of the defendant's conduct.

*Reading Radio, Inc. v. Fink,* 833 A.2d 199, 211 (Pa.Super.2003), appeal denied, 577 Pa. 723, 847 A.2d 1287 (2004) (quoting *Strickland v. University of Scranton,* 700 A.2d 979, 985 (Pa.Super.1997)).

¶ 14 As Appellee points out, our Supreme Court has explained that the rule to be applied in determining if this sort of alleged interference has actually occurred is whether "but for the wrongful acts of the defendant," it is reasonably probable that the plaintiff would have established a contractual relation. *Thompson Coal Company v. Pike Coal Company,* 488 Pa. 198, 412 A.2d 466, 471 (1979). That question cannot be answered in the affirmative here, since, as the trial court observes, "[Appellant] has provided no evidence of an employer, or even the opinion of an employer, who would be willing to hire him with his **current** addiction to cocaine but would not do so because of the theft statement." (Trial Ct. Op. at 26) (emphasis original).[4]

¶ 15 Accordingly, we find that the entry of summary judgment on this and Appellant's other claims[5] was properly entered.

¶ 16 Order affirmed.

---

**4.** The trial court notes Appellant's reliance on testimony from Coach Cheney that he would find employable a coach who had previously used drugs and sought treatment, but would not find employable a coach who was said to have *stolen from players,* even if the accusation were not credible. (Trial Ct. Op. at 26). However, the trial court also points out the statement of Temple's provost and dean, Richard Englert, to the effect that the University would not hire as a coach a person addicted to cocaine. *(Id.).*

**5.** Appellant presents his false light claim as having received the same "surely erroneous" treatment from the trial court as his defamation claim. (Appellant's Brief at 44). No further supporting argument is advanced.