**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4756
_____

MAHENDRA KUMAR TRIVEDI;
TRIVEDI FOUNDATION;
TRIVEDI MASTER WELLNESS, LLC,
Appellants

v.

TANIA M. SLAWECKI
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ No. 4-11-cv-02390)
District Judge: Hon. Matthew W. Brann
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 3, 2015
_____

Before: MCKEE, *Chief Judge*, JORDAN, and VANASKIE, *Circuit Judges*

(Filed: February 10, 2016)
_____

OPINION[*]
_____

VANASKIE, *Circuit Judge.*

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Appellants Mahendra Kumar Trivedi, the Trivedi Foundation, and Trivedi Master Wellness, LLC (collectively referred to as "Trivedi") appeal the District Court's grant of summary judgment to Appellee Dr. Tania Slawecki on Trivedi's claims of defamation and tortious interference with contractual relationships. For the reasons discussed below, we agree that Trivedi's defamation claim fails as a matter of law because Trivedi, a limited purpose public figure, cannot show by clear and convincing evidence either the falsity of Slawecki's statements or that they were made with actual malice. We also agree that Trivedi's tortious interference claims fail as a matter of law because Trivedi has not put forth competent evidence that any existing or prospective contractual relationship was lost as a result of Slawecki's conduct. Accordingly, we will affirm the District Court's judgment.

I.

In 2009 Mahendra Kumar Trivedi became the subject of research undertaken at the Penn State Materials Research Laboratory by Dr. Rustum Roy, director of the laboratory. The purpose of the research was to test Trivedi's assertions that he had unique powers to transform the molecular properties of water. At that time, Dr. Tania Slawecki was a research associate in the lab, working under the direction of Dr. Roy. In 2010, Dr. Roy became gravely ill. He passed away on August 26, 2010.

In the Spring of 2011, Slawecki posted on her personal website a 5-page article titled "Overview and Summary of Research on Mahendra Trivedi Conducted at Penn State University in 2009." (App. 81.) In her article, Slawecki stated that the research had not corroborated Trivedi's claim to be able to change the molecular properties of water.

2

The article went on to assert that Trivedi's physiology was "astounding" and "unusual." (App. 83.) For instance, the article mentioned that he consumed up to 30 liters of water per day without having to urinate, did not sleep, and his pituitary gland was the size of an egg. Quoting from several sources, including one entitled "Casting Out Devils," Slawecki speculated the Trivedi's "condition could be viewed as a kind of spirit possession case." (App. 83–84.) She also questioned whether Trivedi was the cause of Dr. Roy's sudden demise.

Several months after posting her article, Slawecki sent an email to her colleague, Heather McKinney, and Julie March, a former employee of Trivedi's. In her email she complained about being "the sole person to defend the fact that (a) we found NOTHING to scientifically validate Trivedi and (b) Rustum Roy rescinded his support of Trivedi before Rusty died in August of last year." (App. 600.) In the part of the email addressed to March (Trivedi's former employee), Slawecki wrote:

> MANY people are now coming forward and speaking out about the lies and deception of Trivedi and his so-called Foundation. They are scamming people and Trivedi himself keeps abusing women in horrible ways. The more voices speaking up, the better chance we have of putting a stop to this horror. . . .
> . . . .
>
> When I heard you abandoned Trivedi in Az, I realized something had gone awry. I found him to be obnoxious, condescending to women, rude, demanding and generally unspiritual, totally obsessed with his own "powers" and never speaking of "love" ... and I thought he was so awful . . . .
> . . . .
>
> I would have never said anything except that a few months ago, a report[er], Dennis Lang, contacted me to validate that

3

we tested Trivedi here at Penn State and he wanted to know what we found. He was stunned when I said yes, we tested him extensively, but we found NOTHING. . . .

So it is really Dennis Lang, the reporter, who has dug and dug and ultimately been the one who has connected us all - many women who were misled by the "scientific proof" to believe in Trivedi and suffered abuses in his employ - and we're banding together and stepping forward.

We now know Trivedi is taking human growth hormone injections which is what causes his pituitary to be enlarged, causes him to need to drink all that water, increases his virility and makes him irritable and nasty. Thus the data that shows his cartilage is like that of a 20 yr old is true because this is an effect of the HGH. He pretends to be celibate but is driven to sex because of taking HGH. One 19 yr old girl he sexually abused, he beat her up so badly she wound up in the hospital. Her father pulled her out of the group and they are now pressing charges against Trivedi.
. . . .

I told Dennis Lang about your visit to our lab with Trivedi in July 2009 and your subsequent abandonment of him in a remote place in Arizona. We'd love to hear your story if you're willing to share. Anything you wish to remain confidential certainly well [sic], but many are posting their experiences on the www.purqi.com website now to use it to warn others.
. . . .

Julie, I hope you will add your voice to ours to not only warn others, but to help build our collective strength. One of his former employees is dedicated to "bringing him down." She would benefit from your testimony as well. She has two attorneys she is working with and I am providing her with all the scientific data and reports I have that showed we saw nothing.

(App. 600–02.) Although sent only to McKinney and March, Slawecki's

email was disseminated by March to others.

4

Slawecki obtained much of the information in her email from Gloria Zamora, former COO of Trivedi Master Wellness, LLC, and Dennis Lang, a journalist who was investigating Trivedi and his alleged unique abilities. Zamora had told Slawecki over the telephone that "Mr. Trivedi beat a nineteen-year-old girl to the extent that she required hospitalization and that her family was pressing charges." (App. 212.) Dennis Lang had forwarded Slawecki an email sent by one of Trivedi's former students which stated:

> I talked with Chris, Madison's mom[,] yesterday at great length and found out that [Trivedi] has been sexually molesting Madison who is underage and only 19 years old for quite some time. He also did the same thing with Chris['s] sister, Cathy[,] when she was his assistant. He apparently coerced them into sleeping with him . . . .

(App. 299.)

On December 28, 2011, Trivedi filed a lawsuit in the United States District Court for the Middle District of Pennsylvania. In the First Amended Complaint, Trivedi asserted a claim for defamation based upon the statements in Slawecki's email that Trivedi had sexually abused women and that criminal charges had been filed against him. The First Amended Complaint also asserted claims of interference with existing and prospective contractual relationships. Specifically, Count 2 alleged that Slawecki intentionally interfered with relationships that Trivedi and his entities had established with certain persons, identified as "Affiliates," who "perform functions such as marketing and promotion . . . ." (App. 72.) Count 3 alleged that Slawecki intentionally interfered with the relationship between Plaintiffs and their employees and clients, identifying one

5

employee and one client who severed their relationship with Trivedi as a result of Slawecki's conduct.

Following discovery, Slawecki moved for summary judgment. In an extensive 37-page opinion, the District Court thoroughly addressed each claim and concluded that Slawecki was entitled to judgment in her favor. Trivedi timely filed this appeal.

II.

The District Court had subject matter jurisdiction under 28 U.S.C. § 1332(a). We have appellate jurisdiction under 28 U.S.C. § 1291. Our review of the District Court's order granting summary judgment is plenary. *Trinity Indus., Inc. v. Chi. Bridge & Iron Co.*, 735 F.3d 131, 134 (3d Cir. 2013). We view the evidence "in the light most favorable to the nonmoving party." *Id*. at 134–35 (quoting *Kurns v. A.W. Chesterton Inc.*, 620 F.3d 392, 395 (3d Cir. 2010)). Summary judgment is appropriate where the movant establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

III.

A.

To prevail on a cause of action for defamation under Pennsylvania law,[1] a public figure must prove by clear and convincing evidence that a defamatory statement is false

---

[1] Because this case arises under diversity jurisdiction, we will apply the substantive law of the forum state, Pennsylvania. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

6

and that the declarant made the statement with actual malice.[2] *Tucker v. Phila. Daily News*, 848 A.2d 113, 127–28 (Pa. 2004); *see also Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775 (1986) ("[A] public-figure plaintiff must show the falsity of the statements at issue in order to prevail in a suit for defamation."); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964) (holding that a public figure cannot succeed on a defamation claim unless the public figure "proves that the statement was made with 'actual malice'"). Actual malice is present when a statement is made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Sullivan*, 376 U.S. at 280. Reckless disregard "is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Rather, there must be sufficient evidence "that the defendant in fact entertained serious doubts as to the truth of his publication." *Id*. "The question whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 685 (1989).

Trivedi's defamation claim is based upon the statements in Slawecki's July 28th email that Trivedi had committed sexual abuse and had been charged criminally. The District Court determined that a reasonable jury could not conclude by clear and convincing evidence that Slawecki's statements in the July 28th email were false or that

---

[2] The parties agree that Trivedi is a limited purpose public figure. A limited purpose public figure must show that the statement was false and was made with actual malice in the same manner as a public figure. *Am. Future Sys., Inc. v. Better Bus. Bureau of E. Pa.*, 923 A.2d 389, 401–05 (Pa. 2007).

Slawecki acted with actual malice when writing the email. Trivedi's own affidavit stating the allegations of sexual abuse were "absolutely false" is the only evidence Trivedi offered as proof that the statement was false. (App. 514.) "[C]onclusory, self-serving affidavits," such as this, however, "are insufficient to withstand a motion for summary judgment." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) (quoting *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002)). Notably, Slawecki's email had identified a purported victim of sexual abuse, and Trivedi did not present any competent evidence that the sexual abuse with this alleged victim did not occur. Therefore, the District Court was correct in concluding that Trivedi's conclusory affidavit alone falls short of clear and convincing evidence that Slawecki's statements were false.

Even assuming the statements were false, Trivedi has not offered clear and convincing evidence from which a reasonable jury could conclude that Slawecki acted with actual malice. Trivedi asserts that Slawecki exhibited reckless disregard as to the falsity of the statements because: (1) she should have had reason to believe Gloria Zamora was not reliable, but failed to verify Zamora's statements; (2) she admitted that the statement was "gossip" in emails and deposition testimony; and (3) she sent subsequent emails in which she expressed regret over sending the July 28th email.

None of these factors is persuasive. First, even if Slawecki had reason to doubt Zamora's reliability, Slawecki had received substantially the same information independently from Dennis Lang, lending credibility to both sources. Moreover, a "[f]ailure to investigate does not in itself" establish reckless disregard for the truth. *St.*

8

*Amant*, 390 U.S. at 733. Second, despite Slawecki referring to the statement as "gossip," it is clear from her emails and deposition testimony that she believed this information to be accurate and never "entertained serious doubts as to [its] truth." *Id*. at 731. Finally, Slawecki expressed regret over sending the July 28th email because she had mentioned other individuals' names and because the email had resulted in this lawsuit, not because she doubted the truthfulness of the statement. Because we agree that a reasonable jury could not conclude by clear and convincing evidence that the statements were both false and that Slawecki acted with actual malice, we will affirm the District Court's grant of summary judgment on Count One of the First Amended Complaint.

B.

To prevail on a claim for tortious interference with existing or prospective contractual relationships under Pennsylvania law, a party must prove:

> (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; [and] (4) legal damage to the plaintiff as a result of the defendant's conduct . . . .

*Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009); *see also Blackwell v. Eskin*, 916 A.2d 1123, 1127–28 (Pa. Super. Ct. 2007). For prospective contracts, a party must additionally prove "a reasonable likelihood that the relationship would have occurred but for the defendant's interference." *Acumed LLC*, 561 F.3d at 212; *see Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471 (Pa. 1979).

9

In response to Slawecki's summary judgment motion on the interference with contractual relationship claims, Trivedi relies upon a three-page affidavit from Alice Branton, the CEO of Trivedi Global, Inc., in which she named twenty-three persons as having severed their relationship with Trivedi "due to Tania Slawecki's allegations posted on the internet . . . and her allegation that he physically assaulted a girl and had pending criminal charges." (App. 643–44.) Branton does not provide the basis for her knowledge as to the reason why each of the named persons left Trivedi. Nor does she provide competent evidence that Trivedi lost contracts as a result of Slawecki's conduct. As the District Court explained:

> Trivedi has offered no evidence of either existing or prospective contracts. There were no contractual documents provided to defeat summary judgment to show the existence of a contract with these named individuals. Nor was any evidence adduced of a prospective contract, such as an offer or negotiation documents. No facts were presented to defeat the summary judgment motion; Plaintiffs merely set forth the unsupported opinion of [Branton] who stated that twenty-four people left the Trivedi enterprises because of Slawecki's statements, including one employee who apparently began litigation against Trivedi approximately three months before Slawecki wrote the "overview" internet post and the email at issue. In other words, Trivedi has responded with no facts that create a genuine issue for trial.

(App. 37.)

We concur with the District Court's analysis. Trivedi has not produced any contractual documents regarding these twenty-three individuals or provided any evidence outside the affidavit to support the existence of a contract with them. Trivedi has offered no evidence as to their reasons for severing their relationship. Furthermore, Trivedi has

not offered any evidence of prospective contracts by showing a reasonable likelihood that a contractual relationship would have occurred with any affiliate or employee. Branton's "conclusory, self-serving affidavit[] [is] insufficient to withstand a motion for summary judgment." *Kirleis*, 560 F.3d at 161 (internal quotation marks omitted). "At summary judgment, a plaintiff cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Because we agree that Trivedi has not come forward with any evidence to support his claims of interference with existing or prospective contractual relationships, we will affirm the District Court's grant of summary judgment on Counts Two and Three of the First Amended Complaint.

IV.

For the forgoing reasons, we will affirm the District Court's judgment of December 3, 2014.