J-A22006-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LUIGI DEFRANCESCO, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEFFREY A. BROOKS | : | |
| | : | No. 1485 WDA 2021 |

Appeal from the Judgment Entered November 24, 2021
In the Court of Common Pleas of Crawford County Civil Division at No(s):
AD 2021-372

BEFORE:   OLSON, J., DUBOW, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:                **FILED: DECEMBER 28, 2022**

Appellant, Luigi DeFrancesco, appeals *pro se* from an order entered in the Court of Common Pleas of Crawford County on November 24, 2021. The order challenged on appeal awarded summary judgment in favor of Jeffrey A. Brooks (Brooks) and dismissed Appellant's defamation claims. We affirm.

Appellant and Brooks are both members of the Penncrest public school board in Crawford County. On July 15, 2021, Appellant filed a *pro se* civil complaint alleging that Brooks defamed him in seven separate social media posts discussing Appellant's conduct and policy viewpoints relevant to Penncrest school board functions.[1] Appellant's complaint alleged that Brooks published statements that were false, malicious, and harmful to Appellant.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] In its November 24, 2021 opinion and order, the trial court described in detail each posting by Brooks that is alleged to have defamed Appellant. **See** Trial Court Opinion, 11/24/21, at 3-10.

The complaint further alleged that Brooks knew his statements were false but proceeded with publication in reckless disregard of the truth. Appellant complained that Brooks' statements impaired his reputation within the community, which had negative effects on his business, social, and family relationships. For each of these reasons, Appellant claimed that he made the requisite showing under 42 Pa.C.S.A. § 8343 (setting forth the burdens of proof allocated to the parties in an action for defamation) and that he was entitled to recover $30,000.00 in damages from Brooks.

On July 27, 2021, Brooks responded to Appellant's complaint. Thereafter, on August 11, 2021, Appellant filed a motion for summary judgment. Appellant filed a brief in support of his motion on August 19, 2021 and filed an addendum to his motion/brief on September 20, 2021. The trial court entertained oral argument by the parties on September 27, 2021 and, by order and opinion entered on November 24, 2021, awarded judgment in favor of Brooks, concluding (as a matter of law) that the challenged statements were incapable of defamatory meaning and that the record was devoid of proof that Brooks harbored actual malice[2] when he published the challenged remarks.

_____

[2] The trial court applied a legal standard that required actual malice in the publication of defamatory statements since Appellant was an elected member of the Penncrest public school board. *See* Trial Court Opinion, 11/24/21, at 2, *quoting* ***American Future Systems, Inc. v. Better Business Bureau of Eastern Pennsylvania***, 923 A.2d 389, 400 (Pa. 2007) ("If the plaintiff is a public official or public figure [] and the statement relates to a matter of public

*(Footnote Continued Next Page)*

- 2 -

Appellant filed a notice of appeal on December 15, 2021. On December 23, 2021, the trial court, pursuant to Pa.R.A.P. 1925(b), ordered Appellant to file and serve a concise statement of errors complained of on appeal within 21 days. Appellant timely complied on December 29, 2021. The trial court issued its opinion under Pa.R.A.P. 1925(a) on January 5, 2021.[3]

On appeal, Appellant claims that the trial court erred and/or abused its discretion in refusing to enter summary judgment in his favor. First, Appellant claims that the trial court abused its discretion in relying upon Brooks' response to Appellant's complaint since the response was never served and "contained neither [an] oath nor affirmation, nor any proof." Appellant's Brief at 12 and 14. Second, Appellant claims that the trial court abused its discretion in denying his motion for summary judgment because Appellant offered proof that Brooks' statements were false, Brooks failed to demonstrate that his comments were true, and Brooks' repeated publication of false statements demonstrated actual malice.

When reviewing a grant of summary judgment, the scope and standard of review are as follows:

_____

concern, then to satisfy First Amendment strictures the plaintiff must establish that the defendant made a false and defamatory statement with actual malice.") (citations omitted).

[3] In its Rule 1925(a) opinion, the court incorporated its November 24, 2021 determinations that "the seven statements alleged by [Appellant] were individually and collectively found incapable of defamatory meaning nor was there evidence of any actual malice by Brooks." Trial Court Opinion, 1/5/22, at 2.

- 3 -

In reviewing an order granting summary judgment, our scope of review is plenary, and our standard of review is the same as that applied by the trial court. Our Supreme Court has stated the applicable standard of review as follows: an appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is de novo.

Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

*Jones v. Levin*, 940 A.2d 451, 452–454 (Pa. Super. 2007) (internal citations omitted).

We first consider Appellant's claim that the trial court erred and/or abused its discretion in considering Brooks' response to the complaint when denying Appellant's motion. We then address the merit of Appellant's substantive defamation claims.

Appellant complains that the trial court should have entered judgment in his favor since Brooks did not respond to the complaint or, alternatively, Brooks' responsive submission was unsigned and unverified. *See* Appellant's Brief at 13-14. In rejecting this claim, the trial court stated in its January 5, 2022 Rule 1925(a) opinion that:

- 4 -

> Contrary to [Appellant's] contention, Brooks in fact timely filed a document titled "Response," in which he specifically disputed each of [Appellant's] seven claims for defamation. While Brooks' response reflected its *pro se* authorship, there was never a motion to strike it filed by [Appellant]. Hence, it remains a pleading in which Brooks set forth his reasons why each of [Appellant's] claims are without merit.
>
> Secondly, at no time did [Appellant] ever file or serve on Brooks a [n]otice of [i]ntention to [t]ake [d]efault [j]udgment for [f]ailure to [f]ile an [a]nswer pursuant to Pa.R.C.P. 237.1(a)(2)(ii). Without the required *praecipe* putting Brooks on a ten-day notice of a possible default judgment against him, [Appellant] is not entitled to any relief.
>
> Notably, [Appellant's m]otion for [s]ummary [j]udgment filed on August 11, 2021 was an attempt to snap a judgment prematurely.
>
> Thirdly, [Appellant] did not contend or establish that he suffered any prejudice. He has been on notice of the challenges by Brooks to his [c]omplaint by virtue of the written [r]esponse filed a week after service of the [c]omplaint on Brooks (and 12 days after the [c]omplaint was filed).

Trial Court Opinion, 1/5/22, at 2.

We agree with the trial court's conclusion that, in the circumstances of this case, Appellant is not entitled to relief. Here, Brooks' response to Appellant's complaint did not fully comport with our rules of civil procedure. As the trial court correctly observed, however, if Appellant objected to the form (or lack of service) of Brooks' response, he had the option to move to strike the responsive submission or he could pursue a default judgment after filing a ten-day notice. Appellant did neither. Instead, Appellant elected to seek summary judgment, a procedural device aimed at testing the substantive merit of Appellant's defamation claims. Our procedural rules employ certain

- 5 -

safeguards which preclude the entry of adverse judgments without first affording a party some opportunity to cure defective submissions. The trial court did not err in observing those procedural prerequisites.

We now address Appellant's claims that the trial court erred in rejecting the substantive merit of his defamation claims.

> In an action for defamation, the plaintiff must prove: (1) the defamatory character of the communication; (2) publication by the defendant; (3) its application to the plaintiff; (4) understanding by the recipient of its defamatory meaning; (5) understanding by the recipient of it as intended to be applied to plaintiff; (6) special harm to the plaintiff; (7) abuse of a conditionally privileged occasion. Initially, it is the function of the court to determine whether the communication complained of is capable of a defamatory meaning. A communication is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. A communication is also defamatory if it ascribes to another conduct, character or a condition that would adversely affect his fitness for the proper conduct of his proper business, trade or profession. If the court determines that the challenged publication is not capable of a defamatory meaning, there is no basis for the matter to proceed to trial; however, if there is an innocent interpretation and an alternate defamatory interpretation, the issue must proceed to the jury.

> Further, when determining whether a communication is defamatory, the court will consider what effect the statement would have on the minds of the average persons among whom the statement would circulate. The words must be given by judges and juries the same significance that other people are likely to attribute to them.

> When raised by a public official concerning statements bearing on a matter of public concern, claims for defamation are subject to an onerous standard of proof, owing to considerations of free speech that inhere to any claim that implicates the First Amendment. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) (emphasizing the obligation of appellate courts to ensure

that judgments entered pursuant to state tort law do not intrude on the "field of free expression"). Consequently, our Courts' First Amendment jurisprudence makes clear that "statements on matters of public concern must be provable as false before there can be liability under state defamation law, at least in situations ... where a media defendant is involved[.]" **Id.** at 19–20, *citing* **Philadelphia Newspapers, Inc. v. Hepps**, 475 U.S. 767 (1986).[4] Moreover, even "a statement of opinion relating to matters of public concern that does not contain a provably false connotation will receive full constitutional protection." **Milkovich** 497 U.S. at 19-20, *citing* **Hepps, supra**.

**Krajewski v. Gusoff**, 53 A.3d 793, 802-803 (Pa. Super. 2012); **see also** 42 Pa.C.S.A. § 8343 (delineating the parties' burden of proof in a defamation action).

In **Weber v. Lancaster Newspapers, Inc., et al.**, 878 A.2d 63 (Pa. Super. 2005), *appeal denied*, 903 A.2d 539 (Pa. 2006), this Court explained the test used to determine whether a communication has "defamatory character:"

> In an action for defamation, the plaintiff has the burden of proving ... the defamatory character of the communication. It is the function of the court to determine whether the challenged

---

[4] In **Hepps** and **Milkovich**, the United States Supreme Court reserved judgment on whether the requirement of actual malice applied in cases that did not involve media defendants. **See Hepps**, 475 U.S. at 779 n.4; **see also Milkovich**, 497 U.S. at 20 n.6. Our own decisions, however, appear to extend the actual malice rule to cases that do not involve media defendants, so long as the challenged statement involved a matter of public concern. **See Kuwait & Gulf Link Transport Co. v. Doe**, 216 A.3d 1074, 1087 n.4 (Pa. Super. 2019) (rejecting claim that plaintiff in defamation cases did not have to show falsity where defendant was not part of the news media and concluding that "a plaintiff asserting defamation concerning a publication of a matter of 'public concern' bears the burden of proving that the publication was false"), *appeal denied*, 226 A.3d 92 (Pa. 2020). As stated above, Brooks' postings pertained to Appellant's conduct and policy viewpoints concerning a local school board.

publication is capable of a defamatory meaning.  If the court determines that the challenged publication is not capable of a defamatory meaning, there is no basis for the matter to proceed to trial.

To determine whether a statement is capable of a defamatory meaning, we consider whether the statement tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third parties from associating or dealing with him.  Libel is the malicious publication of printed or written matter which tends to blacken a person's reputation and expose him to public hatred, contempt or ridicule.  The court must view the statements in context.

Words which standing alone may reasonably be understood as defamatory may be so explained or qualified by their context as to make such an interpretation unreasonable.  Thus, we must consider the full context of the article to determine the effect the article is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate.

It is not enough that the victim of the [statements] ... be embarrassed or annoyed, he must have suffered the kind of harm which grievously fractured his standing in the community of respectable society.

*Weber*, 878 A.2d at 78, *quoting* ***Tucker v. Phila. Daily News***, 848 A.2d

113, 123–124 (Pa. 2004) (internal citations and quotations omitted);

***Scott-Taylor Inc. v. Stokes***, 229 A.2d 733, 734 (Pa. 1967); ***Blackwell v.***

***Eskin***, 916 A.2d 1123, 1125 (Pa. Super. 2007).

In determining whether a statement is capable of defamatory meaning,

a distinct standard is applied if the publication is of an opinion.  ***Veno v.***

***Meredith***, 515 A.2d 571, 575 (Pa. Super. 1986), *appeal denied*, 616 A.2d

986 (Pa. 1992).  "A statement in the form of an opinion is actionable only if it

may reasonably be understood to imply the existence of undisclosed

- 8 -

defamatory facts justifying the opinion.  A simple expression of opinion based on disclosed ... facts is not itself sufficient for an action of defamation." **Id.** (internal citations omitted); **see also Neish v. Beaver Newspapers, Inc.**, 581 A.2d 619, 622–624 (Pa. Super. 1990), *appeal denied*, 593 A.2d 421 (Pa. 1991) (criticism of the way appellant handled his job and suggestions that he should be replaced were opinions not based on undisclosed defamatory facts and were not actionable; while statements "might be viewed as annoying and embarrassing, [they were] not tantamount to defamation").

We have carefully reviewed the certified record, the submissions of the parties, and the pertinent case law.  Based upon our review, we conclude that the trial court correctly determined, as an initial matter of law, that Brooks' seven social media postings were either true or incapable of defamatory meaning since they pertained to matters of public concern (*e.g.* Penncrest school board policy and functions), could not reasonably be understood to have grievously fractured Appellant's standing in the community, and/or because the statements simply expressed opinions based on known facts and did not imply the existence of undisclosed false or defamatory facts.  **See** Trial Court Opinion, 11/24/21, at 3-10.  As such, the trial court properly entered judgment in favor of Brooks.  Because we further conclude that the trial court adequately and accurately resolved the issues Appellant raised on appeal, we adopt the trial court's November 24, 2021 opinion as our own.  The parties

are therefore directed to include a copy of the trial court's November 24, 2021 opinion with all future filings pertaining to the disposition of this appeal.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/28/2022

J-A22006-22

IN THE COURT OF COMMON PLEAS OF CRAWFORD COUNTY PENNSYLVANIA

LUIGI DEFRANCESCO
    Plaintiff

    v.

                         AD 2021-372

JEFFREY A. BOOKS
    Defendant.



## MEMORANDUM AND ORDER

**William R. Cunningham, Senior Judge**

The presenting matter is the Plaintiff's Motion for Summary Judgment. Both parties appeared *pro se* for oral argument on September 27, 2021. When the dust settled, the appropriate disposition is to dismiss this case *en toto*.

Plaintiff Luigi Defrancesco ("Defrancesco") and Defendant Jeffrey Brooks ("Brooks") are members of the Penncrest public school board. *See Complaint, paragraph 19*. Defrancesco alleges Brooks is liable for defamatory statements Brooks made about him on Facebook. Defrancesco makes a specific demand for damages of $30,000. After review of the Complaint, and considering all reasonable inferences in favor of Defrancesco, the statements averred are incapable of defamatory meaning. Accordingly, this case cannot move forward.

In a defamation case, "As a threshold matter, it is up to the trial court to determine whether the statement in question is 'capable of' a defamatory meaning. If the trial court determines that it is not capable of defamatory meaning, it should dismiss the suit." *Reed v. Pray,*

53 A.3d 134 (Pa.Cmwlth.2012)(citing *MacElree v. Phila. Newspapers, Inc.,* 674 A.2d 1050 (Pa. 1996)).

A statement is defamatory if it tends to harm the reputation of another so as to lower the subject person in the estimation of the community or deter third persons from associating or dealing with the person. *Corabi v. Curtis Publishing Co.* 273 A.2d 899, 904 (Pa. 1971). It is not enough that the person be embarrassed or annoyed; the person must have suffered the kind of harm which has grievously fractured his or her standing in the community of respectable society. *Reed v. Pray,* 53 A.2d 134, 140 (Pa. 2012)(citing *Tucker v. Phila. Daily News,* 848 A.2d 113, 124 (Pa.2004)).

In determining whether the challenged communication is defamatory, the court must decide whether the communication complained of can fairly and reasonably be construed to have the libelous meaning ascribed to it by the party. *Corabi v. Curtis Publishing Co., supra; Bogash v. Elkins,* 176 A.2d 677 (Pa.1962); *Doman v. Rosner,* 371 A.2d 1002 (Pa.Super.1977).

### ACTUAL MALICE

Defrancesco is clearly a public official. "If the plaintiff is a public official or figure, and the statement relates to a matter of public concern, then to satisfy the First Amendment strictures the plaintiff must establish that the defendant made a false and defamatory statement with actual malice." *American Future Systems, Inc. v. Better Business Bureau of Eastern Pennsylvania,* 923 A.2d 389, 400 (Pa. 2007).

2

To establish actual malice, "there must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. *Coleman v. Ogden Newspapers, Inc.*, 142 A.3d 898, 906 (2016). Actual malice can be shown when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation, or where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *Id.* (Internal citations omitted).

A court must also examine the challenged statement in context. *Baker v. Lafayette Coll.*, 532 A.2d 399, 402 (Pa. 1987). Standing alone, certain words may reasonably be understood as defamatory. But the context may provide an explanation that would render such an interpretation unreasonable. *Balletta v. Spadoni*, 47 A.3d 183, 197-198 (Pa.Cmwlth.2012).

Against this legal backdrop, Defrancesco alleges Brooks made a total of seven (7) defamatory statements, with each statement standing alone deemed defamatory. Whether viewed individually or collectively, the statements do not give rise to a claim of defamation against Brooks. Each statement will be individually reviewed.

## THE LETTER BY AN ELEVEN-YEAR-OLD CHILD

Defrancesco first alleges that, on February 28, 2021, Brooks posted a picture on Facebook of a letter that Brooks wrote when he was eleven years old. Referring to the letter, Brooks wrote:

"11 year old me, writing about the zoning hearing (or hering) I attended. Name calling and bad language, Luigi trying to impeach my grandfather. 1978 was so boring I chose to go to these meetings." *Complaint, paragraph 4* (parenthetical in original).

There are several reasons this Facebook post is not defamation. Based on the sentence cited by Defrancesco as defamatory, it is a leap to conclude the Luigi referenced in the letter is

3

the Plaintiff. The year was 1978, there is no last name given nor can it ever be established there was only one Luigi in this municipality or the surrounding area. Nonetheless, giving Defrancesco the benefit of the inference that he is the referenced Luigi, the conduct attributed to him is "trying to impeach my grandfather."

There is no definition of impeachment provided in this statement that infers any wrongdoing by Luigi. It is also use of the word "impeach' in the mind of an 11 year-old, so it is hard to know what the child meant when using this word. In its ordinary usage, to impeach means to discredit or create doubt(s) about the credibility of the subject's words or conduct.

The subject of the impeachment, i.e., the object of any alleged wrongdoing, is the grandfather, not Defrancesco. "Luigi" was trying to point out something unfavorable about the grandfather. It is unknown what was the factual basis for such impeachment or whether Luigi was successful.

Simply alleging that Luigi was trying to impeach my grandfather is a bald statement of a minor child that does not impugn Defrancesco. The only context of this statement is that it was the observation of an eleven-year-old boy who was so bored that he went to a zoning board hearing. It is the child's rudimentary observation of what he saw at the hearing.

Without more information regarding the context of the statement, there was no basis for embarrassment or annoyance for Defrancesco. There is no evidence to infer this statement caused any new harm to Defrancesco; it certainly could not have "grievously fractured his standing in the community of respectable society.

4

## TRUTH IS A DEFENSE

Following the Facebook post by Brooks of his letter as an eleven-year old, Defrancesco took action. According to his Complaint:

> The Plaintiff delivered a letter to the defendant through constable Rebecca McNulty on or about May 15, 2021. The letter contained a privileged request by the Plaintiff asking the Defendant to cease and desist defaming the Plaintiff and to solve the issue *amicably*. Exhibit C.

*Complaint, paragraph 13*(emphasis in original).

Sometime after Plaintiff's letter was served on Brooks by Constable McNulty, Brooks made this Facebook post:

> "I had papers served to my house because when I was 11 I wrote a paper about [a] zoning meeting and they apparently didn't like it."

*Complaint, paragraph 14.*

Defrancesco claims the above post by Brooks is defamatory. This claim is illogical. There is nothing within this post that constitutes actual malice or even a casual insult to Defrancesco, who was not even mentioned as the party serving papers on Brooks.

Assuming arguendo this post is defamatory, the sole content of this post is factually true — Brooks had a letter served on him by Defrancesco as a result of the letter Brooks wrote as an eleven-year-old. Defrancesco admits that fact in Paragraph 14 of his Complaint.

Under Pennsylvania law, truth is an absolute defense to defamation. 42 Pa.C.S.A. § 8343(b). Accordingly, the undeniable truth of this post by Brooks is a complete defense to any claim of defamation.

5

## IMPEACHING A REPUBLICAN

Next, Plaintiff interprets a comment Brooks made on another person's Facebook page as defamatory. The comment states,

"Michael, Its [sic] funny, Luigi was a Democrat trying to impeach a Republican then. Times change, I guess." *Complaint, paragraph 10.*

In these partisan, polarizing times, where Democrats and Republicans are constantly slinging useless mud at each other on the federal, state and local levels, this Facebook post by Brooks is not worthy of much notice or any concern; it exists within the vacuous hot air of social media bashing.

Defrancesco objects because he claims he has been a registered Republican since November 16, 1977. *Complaint, paragraph 10.* This contention is meaningless - Republicans criticize Republicans just like Democrats criticize Democrats. Whether he is a Democrat or a Republican, the gist of Defrancesco's claim of defamation is that he was wrongly accused of "trying to impeach a Republican". For the reasons previously discussed, this bald statement cannot be construed as impugning Defrancesco, nor does it "grievously fracture" his standing in respectable society.

## A COMPLIMENT IS NOT DEFAMATORY

Next, Defrancesco alleges the following post by Brooks is defamatory:

"Mr. Defrancesco rightfully stated in a separate discussion that board members do not need to explain their votes to the public." *Complaint, paragraph 17.*

6

This statement is incapable of defamatory meaning. To the contrary, the plain meaning of this comment is the recognition by Brooks that Defrancesco was correct, board members do not need to explain their votes to the public as a matter of law in Pennsylvania. This compliment by Brooks cannot be converted into a claim for $30,000 by Defrancesco.

## CONFLICTING INTERPRETATIONS

Defrancesco's next three claims of defamatory all require the same analysis as they relate to Brooks' observations on Facebook of school board meetings held in June, 2021. In each instance, the basis for Defrancesco's claim is that he has a different interpretation of what he said at a public meeting.

The first comments relate to what occurred at a public board meeting on June 14, 2021. The Facebook post from Brooks contained this observation:

> "Mr. Defrancesco said we need a retreat because 'Mr. Brooks is a
> liar' and I am responsible for all of the problems in the district."
> Complaint, paragraph 18.

Defrancesco disagrees with the accuracy of the post by Brooks. According to Defrancesco, he said "Mr. Brooks is the only one who needs to go to a retreat because he never bothered to read the Public School Code and he has attended numerous training sessions given by the PSBA (Pennsylvania School Board Association) to new Board members but he has not learned how to be an effective Board member" Complaint, para. 18.

Unfortunately, these comments by Brooks and Defrancesco typify the quarrels between school board members. Sitting on a school board is a commendable, time-consuming job and

7

often requires a Board member to make difficult, at times controversial, decisions. Part of the job is bearing criticism as a public figure. Reasonable minds can disagree on how the school is being run or how a Board member votes or acts. The ultimate arbiter of the board member's conduct is the electorate. While it is possible that a statement made by a board member *could* run so afoul of First Amendment protection to make it capable of defamatory meaning, this is not one of those occasions.

The Facebook post by Brooks is not <u>about</u> Defrancesco. Instead Brooks is the object of his own post. Brooks is the one being called a liar and the person responsible for the school district's problems. Defrancesco denies the truth of Brooks' characterizations. Regardless, any comments by Defrancesco about Brooks at a public meeting are a matter of public record. That Brooks and Defrancesco may have different interpretations of Defrancesco's comments does not give rise to a claim of defamation against Brooks. The public can decide who to believe. If the public favors Defrancesco's version, then he has suffered no damages. If the public favors Brooks interpretation, then Defrancesco is the cause of any damage he suffers.

## REACH OF A BOARD PRESIDENT

Defrancesco next objects to this Facebook post by Brooks regarding the June 16, 2021 Board meeting: *"Our district was starting to turn the corner and undo damage done starting with Mr. Defrancesco's time as board president."* Complaint, para. 19.

Once again, Defrancesco disputes the accuracy of Brooks' post. Defrancesco argues Brooks "has or should have learned, at the PSBA training sessions he attended....the president of school Boards does not have executive power to force the administration to carry out his/her

8

wishes...decisions and guidance for district administrators come from a majority of the Board not from any single Board director." *Id.*

Defrancesco's comments could be an insult to anyone with a basic knowledge of our democratic form of government, to-wit, that it takes a majority of a board of nine members to pass policy, that a board president alone cannot do so. Defranchesco's attempt to exonerate himself by contending that he was without "executive power" to force his will on the administration does not convert the Facebook post by Brooks into defamation.

Defrancesco also hides the context of the post by Brooks. In the very next sentence after the one Defrancesco claims is defamatory, Brooks presents a factual basis for his opinion: "We were ranked bottom 50 out of 500 districts in the state. We rose to top half over the last 3 years." *Complaint, Exhibit E, p. 2.* These statements do not allege facts so improbable that it would be reckless to publish them. Taken together, these statements by Brooks are a legitimate criticism of the school district's performance during and after the time Defrancesco was President.

These statements are fodder for the public discussion of the school district's performance over time compared to other schools. As a matter of context, these statements are incapable of defamation against a Board member serving on the Board during these time periods.

### REASONABLE MINDS CAN DIFFER

Lastly, Defrancesco seeks monetary relief for this allegedly defamatory Facebook post:

*"Mr. Defrancesco and Mr. Valesky are exactly who we knew they were. Their homophobia and bigotry are part of their appeal to voters locally." Complaint, para. 20.*

9

This posting arises from a controversy facing many school districts involving library resources discussing LGBTQ+ history. It appears Defrancesco and Brooks are on opposing sides of the LGBTQ+ resources issue.

In his Facebook postings attached as Exhibits D and E to Defrancesco's Complaint, Brooks speaks at length about his thoughts on the LGBTQ+ matters within the Penncrest school district. In so doing, he also discusses the public conduct of Defrancesco. Notably, Exhibits D and E are each 5 pages long, with Defrancesco lifting one sentence out of these 10 pages to claim as defamation. *See Complaint Exhibit E, p. 2.* When the 10 pages are read *en toto* and in the context of the controversy surrounding the school district, the one sentence by Brooks cited by Defrancesco does not give rise to a defamation claim against Brooks.

It is not as though Brooks doubted the truth of what he said and published it anyway. The statements by Brooks were not made with actual malice.

## CONCLUSION

The statements by Brooks are all related, directly or indirectly, to school district issues and his disagreement with the votes and/or conduct of Defrancesco in the public arena.

Defrancesco is a public official who has to accept the criticism that goes with serving as a school board member. Defrancesco frequently and freely criticizes Brooks for his votes and/or conduct on the school board, some of which are more biting than the statements by Brooks. This lawsuit presents an attempt by Defrancesco to silence a fellow Board member whose views differ from his.

It cannot be said or inferred that Brooks doubted the truth of his statements. There is nothing in any of these statements that is so inherently improbable that only a reckless man

10

would publish them. These statements by Brooks cannot reasonably be construed as showing a reckless disregard for truth. As a result, Defrancesco cannot establish actual malice by Brooks.

Defrancesco may be annoyed by the above statements, but his interpretation of the statements as defamatory is unsustainable. Withstanding criticism from opposing school board members is part of his job as a public official. And the right to call a public official's opinion into question is a fundamental tenet of free speech in a democratic society. Finding none of the statements capable of defamatory meaning, and exercising the gate-keeping authority needed for such matters, this case is dismissed.

November 23, 2021

_____
WILLIAM R. CUNNINGHAM, Senior Judge

cc: Luigi Defrancesco, Plaintiff
    Jeffrey A. Brooks, Defendant

11

## IN THE COURT OF COMMON PLEAS OF CRAWFORD COUNTY PENNSYLVANIA

LUIGI DEFRANCESCO          :
    Plaintiff             :
                          :
v.                         :          AD 2021-372
                          :
JEFFREY A. BOOKS           :
    Defendant.            :

## ORDER

William R. Cunningham, Senior Judge

AND NOW, this ___23___ day of November, 2021, it is hereby ORDERED that the case is

DISMISSED with prejudice for failure to set forth statements capable of defamatory meaning.

SO ORDERED:

November 13, 2021

_____
William R. Cunningham, S.J.

cc: Luigi Defrancesco, *pro se*
    Jeffrey Brooks, *pro se*

Distributed by Prothonotary Office

Dist _____

Faxed _____

Mailed _____ PUS & OSL. 11-24-21

Emailed _____

Moving Party "MUST" Notify Opposing Party

12